Vol. 115]   APRIL TERM, 1903.   757

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

CASE 91—ACTION BY FIRST NATIONAL BANK OF LOUISVILLE AGAINST
MUTUAL BENEFIT LIFE INSURANCE COMPANY, OF NEWARK, N. J.,
AND W. A. SUDDUTH'S EXECUTOR ON A LIFE POLICY OF SUDDUTH
ASSIGNED TO SAID BANK.—JUNE 3.

# Mutual Benefit Life Ins. Co. of Newark, N. J. v. First National Bank of Louisville, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR PLAINTIFF AND THE INSURANCE COMPANY APPEALS.
REVERSED.

LIFE INSURANCE—LOAN ON POLICY—FAILURE TO PAY PREMIUM—CASH
SURRENDER VALUE—APPLICATION OF LOAN—TERMINATION OF IN-
SURANCE—USURY—ASSIGNMENT OF POLICY—ESTOPPEL OF COM-
PANY—NOTICE OF MATURITY OF PREMIUM—VALUATION OF POLICY
—STATUTORY PROVISIONS.

Held:   1. A life policy gave the insured, on forfeiture for nonpay-
ment of premiums, an option to have the net reserve applied to
the purchase of term insurance, or a paid-up policy, or, after
a computation less favorable to him, paid as a cash surrender
value.   If there was a loan on the policy, such cash surrender
value was to be applied in satisfaction thereof, and the bal-
ance paid in cash, or applied to the purchase of term or paid-up
insurance.   The company agreed to loan at any time on the
policy up to the limit of its cash surrender value.   At the time
of nonpayment of a premium the cash surrender value was just
sufficient to satisfy a loan made by the company on the policy.
HELD, that the insurance terminated, not by way of forfeiture
for nonpayment of the loan, but because there remained nothing
due the insured wherewith to purchase extended insurance.

2. Where the cash surrender value of a life insurance policy is not
diminished because of a loan made by the company thereon, the
loan can not be usurious.

3. A life insurance company is not estopped to insist on the appli-
cation of the cash surrender value of a policy to a loan made
by the company on the policy by the fact that it assented to
an assignment of the policy, the policy at the time bearing in-
dorsements reciting the existing indebtedness to the company
thereon, as evidenced by certificates of loans in its possession.

4. Though a life insurance policy provides that the company will

**758** KENTUCKY REPORTS. [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

loan on the policy up to the limit of its cash surrender value upon a satisfactory assignment of it to the company as collateral, the company is not obliged to take an assignment in order to secure priority of lien on the cash surrender value over the insured's assignee, who takes with notice of the loan.

5. Notice of the maturity of a premium on a life insurance policy is sufficient if given to the insured, notwithstanding the assignment of the policy with the company's consent.

6. Kentucky Statutes, 1899, section 653, prescribing how life insurance policies shall be valued by the insurance commissioner in determining the solvency of the company, has no application to the valuation of a policy for the purpose of determining insured's rights on forfeiture, the policy itself providing the rules for its valuation.

DODD & DODD AND HARRIS & MARSHALL, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. No particular form is necessary to constitute an equitable assignment of a debt or other chose in action. Any order, writing or act which makes an appropriation of the fund, amounts to an equitable assignment of that fund. An assignment of a debt may be by parol as well as by deed. Story's Equity Jurisprudence, sec. 1047; Newby, &c., v. Hill, &c., 59 Ky. (2 Met.), 530; Corn v. Simms, 60 Ky. (3 Met.), 398, and Brooks, Waterfield & Co. v. Staton's Admr., 79 Ky., 179.

2. When it is admitted that the policy sued on was in lien to appellant for money loaned to assured by means of which the policy was kept alive and made an asset at the time appellee acquired same as collateral for an antecedent debt, the contest herein becomes merely one of equities in which the elder must prevail. Newby, &c., v. Hill, 59 Ky. (2 Met.), 530.

3. A creditor who receives collateral security from his debtor for an antecedent debt, and parts with nothing of value, but still holds his debtor bound and retains all his prior securities (as did appellee when it acquired the policy sued on from Sudduth) is not regarded by the law merchant as paying for it a valuable consideration, and does not acquire a title to it superior to that of the lawful owner or prior assignee. Alexander & Co. v. Springfield Bank, 59 Ky. (2 Met.), 334; May v. Quimby & Co., 66 Ky. (3 Bush), 96.

4. Under a life insurance policy, as the one sued on, containing nonforfeiture provisions, declaring that upon default after payment of two annual premiums, the 4 per cent. net reserve *"provided there be no loan on the policy,"* would be applied to the purchase of nonparticipating term insurance, the payment

of premiums partly in cash and partly by loan from the company, evidenced by a certificate signed by insured, reciting that the company had loaned the amount on the policy, constitutes an indebtedness due the company, within the meaning of such provisions. Omaha Nat. Bank v. Mut. Ben. Life Ins. Co., 84; Fed. Rep., 122.

5. It is perfectly competent for the directory of a purely mutual life insurance company (as appellant) to declare a dividend payable upon such policies as should be continued in force after the policy anniversaries by payment of renewal premium, and to provide that no dividend should be paid upon a policy not continued in force after the anniversary of such policy in such year. Bryant v. Mutual Benefit Life Ins. Co., 109 Fed. Rep., 748; Ford v. Thread Co., 158 Mass., 84; 32 N. E. Rep., 1036; 20 L. R. A., 65; 35 Am. St. Rep., 462.

6. There is nothing in the contention of appellee that the policy sued on was changed or modified by the language found in the last premium loan certificate evidencing the policy loan indebtedness at the date of its lapse, July 30, 1899, and reading as follows: ·

"If the interest be not so paid either in cash or by dividend credited to the policy, such interest shall be added to the principal of the loan, and if owing to the nonpayment of interest the principal of the *loan shall ever equal or exceed the then cash surrender value of the policy, the policy shall thereupon become null, void and be surrendered to the company in consideration of the loan.*"

Because appended thereto, and forming a part of the substituted nonforfeiture provisions of the policy were tables giving in figures the cash surrender value and the loan value at the end of each year, and it being admitted that at the date of lapse of the policy July 30, 1899, the existing policy loan indebtedness with accrued interest was up to the full loan value of the policy, and that the loan value was exactly equal to the cash surrender value, and payable only out of "cash surrender value," or commercial value of the policy, it necessarily follows that the whole value of the policy (a loan existing at date of lapse) was consumed in payment of the indebtedness on the policy and nothing remained of value to the policy. The policy not voided by nonpayment of interest, but by nonpayment of the premium due July 30, 1899. See Bryant v. Mutual Benefit Life Insurance Co., 109 Fed. Rep., 752. .

7. The policy sued on provided "*that in case the said premium shall not be paid on or before the several days hereinbefore mentioned for the payment thereof,* at the office of the company in the city of Newark, or to agents when they produce receipts

signed by 'the president or treasurer, *then, and in every such case this policy shall cease and determine,*" subject to the provisions of the company's non-forfeiture system. The loan on the policy at the date of its lapse by nonpayment of premium, July 30, 1899, never equaled the 4 per cent. net reserve, but not having been paid in cash had to be paid out on the full cash surrender value of the policy and the entire 4 per cent. net reserve reduced "*in the ration of the indebtedness to the full cash surrender value,*" and the indebtedness being 100 per cent. of the cash surrender value, it necessarily follows that when the entire 4 per cent. net reserve was reduced by 100 per cent. thereof nothing remained of value to the policy.

8. It certainly could not be that "the ratio of the indebtedness to the full cash surrender value" meant or could mean a reduction of the entire 4 per cent. net reserve by the policy loan indebtedness, as such indebtedness (a loan existing on the policy at date of its lapse) was payable and could only be paid out of "cash surrender value."

9. The terms *"cash surrender value"* and *"full cash surrender value"* referred to in the nonforfeiture provisions of the policy sued upon mean the same sum (meaning the sum of $617.30, as of date, July 30, 1899, and given in the table appended to and made a part of the policy). No other rational conclusion could be reached as has been held by a court of high authority. Bryant v. Mutual Benefit Life Ins. Co., 109 Fed. Rep., 748.

10. No forfeiture of the policy sued upon was claimed by appellant in its pleadings or proof. It only claimed that at the date of the lapse of the policy a loan indebtedness existed thereon as of the date of said lapse July 30, 1899, in the sum of $617.30; that this indebtedness, confessedly, not having been paid in cash by the assured, was payable and could be paid, under the policy, only out of the cash surrender value, which was confessedly the sum of $617.30, and that as the ratio of the indebtedness to the cash surrender value of the policy was 100 per cent., the entire 4 per cent. net reserve value of the policy was reduced by 100 per cent., and that nothing was left of value to the policy. It must follow from the admitted facts in this case that the cases of Insurance Co. v. Grigsby, 10 Bush, 317, and long line of kindred cases in Kentucky respecting the rights of forfeiture of rights under an insurance contract can have no application to this case.

MATT O'DOHERTY, FOR APPELLEE, FIRST NATIONAL BANK.

### RESUME.

The unsigned stencil memorandum on the policy in Sudduth's possession and by him assigned to appellee, did not charge ap-

Vol. 115]          APRIL TERM, 1903.          761

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

pellee with notice of the alleged prior assignment or pledge of the policy to appellant. On the contrary, the possession of the policy by Sudduth authorized appellee to believe that the policy had not been pledged or assigned to the appellant or to any one, and that Sudduth was sole owner thereof.

2. Appellee had no notice of the alleged right of forfeiture attempted to be secured to appellant by the provisions of the certificate of loan of which appellant had exclusive possession.

3. The appellant, by accepting and filing notice of the assignment of the policy, and all right and benefit thereunder, from Sudduth to appellee, without giving appellee notice of its (appellant's) alleged prior claim on said policy, actively aided Sudduth in transferring the policy to the appellee, and appellant is thereby estopped to set up its alleged prior claim thereto as against appellee.

4. The appellant, by failing to give the appellee notice of the July premium on the policy, or of the fact that it was unpaid, or of the fact that it had or claimed the right to cancel the policy by the application of its entire net reserve or cash surrender value to the payment of the loan certificate, was without power to exercise such pretended right as against the appellee, and the attempted exercise of such power was a fraud upon the rights of appellee, which is aggravated by the undisputed fact that the appellant gave appellee notice from time to time as to the maturity of premiums on other policies held by it by assignment as collateral on loans.

5. Even if the estoppels pleaded and established by the proof were not a complete bar to the defense set up in appellee's answer, and assuming that appellee, an assignee for value, holds no other position than that of its assignor, which, of course, is not the law, still appellant was not prejudiced by the judgment appealed from, for the reason that the net reserve or full cash surrender value of the policy on July 30, 1899, was sufficiently in excess of the loan certificate and interest to continue the policy in force up to the death of Sudduth in November, 1899.

6. By the terms of the nonforfeiture provisions of the policy, *except where the insured elected to surrender his policy and take the cash surrender value named in the table,* "the entire net reserve of the policy at the time of lapse, less adjustment for loan, was applicable as a single premium at the company's published rates to the purchase of nonparticipating term insurance for the full amount of the original policy with existing dividend additions." (See Appellant's Manual, p. 16, sec. 86.)

The undisputed evidence shows that the net reserve of the policy exceeded the amount of the loan and interest by $101, a

**762** KENTUCKY REPORTS. [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

sum sufficient to have extended the policy fourteen months later than the death of the insured.

7. No premium "would have become due" on the original policy had it remained in force after July 30th, and up to the death of Mr. Sudduth in November, 1899, therefore no premium could have been deducted from the insurance on the extended policy. Besides, by applying the net reserve or cash surrender value to the purchase of term insurance, such insurance was paid for, and appellant can not demand double payment.

8. The certificate of loan having been paid by appellant, as alleged by it, out of the value of the policy under its nonforfeiture provisions on July 30th, no indebtedness remained to appellant on the policy at the death of the insured, November 29th. The contention that the appellant could establish or enorce a rule which would enable it to be twice paid the same debt and interest is too monstrous for decent discussion. If appellant could get its debt paid out of the net reserve of the policy and regain out of the proceeds of the extended policy, why might not any other creditor holding the policy as collateral claim the same right? In its capacity as money lender, as this court has frequently held, the appellant's rights were no greater than those of any other person loaning money on the policy.

9. By failing to offer to cancel the loan certificate held by it, and by failing to ask or demand a surrender of the policy in consideration of such cancellation, as in the certificate of loan provided, the appellant must have led Sudduth, the insured, to believe that appellant meant to indulge him in the payment thereof. As between Mr. Sudduth and appellant, the terms of the loan certificate superseded all others in relation to the avoidance of the policy by the payment of a debt equal to its full value, and as these terms required that the policy should only be surrendered *in consideration of the cancellation* of the loan certificate, this imposed the duty on appellant of signifying to Sudduth its desire or purpose to cancel the indebtedness upon surrender of the policy. It is not even pretended that appellant ever signified any such purpose or desire to Sudduth.

10. No motion to set aside, correct, or modify the judgment appealed from, and no motion for a new trial as against it was made by appellant in the court below. Hence this honorable court, at the instance of appellant, can only inquire whether the judgment is supported by the pleadings in the case.

There was no error to appellant's prejudice committed by the court in reducing the amount of interest allowed appellee under the judgment of March 12, 1891, which the court set aside. An error as to the amount of interest, whether too much or too

Vol. 115]          APRIL TERM, 1903.          763

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

little, is a mere clerical misprision which the court had full power to correct.

We earnestly and confidently ask that the judgment be affirmed on the appeal and reversed on the cross-appeal, and that the credit of $617.30 in the judgment be disallowed, and that the case be sent back with instructions to the lower court to enter judgment for that sum in appellee's favor with interest.

### AUTHORITIES CITED.

Callahan v. First Nat. Bank, 78 Ky., 606; St. Louis Mutual Life Ins. Co. v. Grigsby, 10 Bush, 317; Northwestern Mutual Life Ins. Co. v. Fort's Admr., 82 Ky., 278; May on Insurance, vol. 2, sec. 389; Wilson v. Scott, 12 Ky. Law Rep., 693; Id., 13 Ky. Law Rep., 926; Herman on Estoppel, sec. 1061; Mutual Ben. Life Ins. Co. v. Dunn, 21 Ky. Law Rep., 213; Randolph on Commercial Paper, sec. 802; Home Ins. Co. v. Muir, 21 Ky. Law Rep., 829; Bane v. Travelers Life Ins. Co., 85 Ky., 679; Montgomery v. Phoenix Ins. Co., 14 Bush, 51; Johnson v. Southern Mutual Life Ins. Co., 79 Ky., 402; Darrow v. Ins. Co., 116 N. Y., 537; Lawe v. Hyde, 39 Wis., 345; Helm v. Coffee, 80 Ky., 176; Civil Code, sec. 312, subsec. 2; Seiler v. Northern Bank of Ky., 86 Ky., 129; Dodds v. Combs, 3 Met., 29; Herndon v. Ashby, 4 B. M., 491; Clark v. Finnell, 16 B. M., 334.

LEOPOLD & PENNEBAKER, for FIDELITY TRUST & SAFETY VAULT COMPANY, EXECUTOR OF SUDDUTH.

It has been held in fire insurance that where a policy of insurance is assigned to a purchaser with the consent of the company this forms a new contract, to which the assignee becomes a party, and no subsequent acts of the assignor can affect its validity.

We are not unmindful of the distinction made between life and fire policies with reference to assignment, but we feel that the doctrine in the case of Pollard v. Somerset Mutual Fire Insurance Company (42 Me., 226), which is supported by a long line of authorities, is the proper rule in the case at bar.

"Courts of law in all cases uphold and protect the equitable interests of the assignee. The policy by its terms is payable to the plaintiff or his assignee. . . . The assignment to Everett having been made with the knowledge and assent of the defendants thereto, the assignor ceases to have the power to defeat the rights of the assignee, and the defendants knowing of and assenting to the assignment are so far parties to the same that they can not take advantage of any subsequent acts of the assignor."

**764**     **KENTUCKY REPORTS.**     [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

This is a fair statement of the doctrine, and we contend that inasmuch as the insurance company had notice of this assignment and accepted same, it should be subject to the same rule, and that it was its duty, under the circumstances to give the assignee bank notice of the maturity of premiums, if any matured, and otherwise protect its rights in the premises.

This is the very reason the bank gave it notice, and if it was the intention of the insurance company to act fairly and squarely in the matter, it certainly should have advised the bank of the maturity of premiums, as the bank, having given its notice of the assignment, had the right to expect such information from the company, and, further, had the right to rely upon the protective "self-carrying" feature of the policy.

If there were any loans upon this policy which, with interest added, became the equal of the cash surrender value on July 30, 1899, and cancelled the loan indebtedness existing on the policy, whereupon the policy became null and void, it was the duty of the insurance company to have notified the bank of such conditions. The bank having made the loan in good faith, and not as is asserted by learned counsel for the company to secure a past due indebtedness, but upon advancements made at the time of the loan, this company should have protected it in law and in ethics, and we feel assured that your honors will sustain the rulings of the lower court.

We think that this clinches the case, and, as the matter has been fully briefed by our learned colleague, we will respectfully ask that the case be affirmed on this appeal, and as the bank had no notice of the loan, be reversed on the cross-appeal.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

On July 30, 1897, the appellant issued to Watson A. Sudduth a policy insuring his life in the sum of $5,000 for the benefit of his executors or assigns in consideration of the payment of a semi-annual premium of $63.50. He paid the premiums for twelve years. On July 14, 1898, he borrowed of the company on the policy $549.60, executing a note due in six months. At maturity, an additional loan being made, the note was renewed for $599.32, payable July 30, 1899. On May 6, 1899, Sudduth, for value, assigned the policy to the appellee, the First National Bank of Louisville. The assignment was assented to by the company in writing,

but it was stipulated therein that the assignee agreed that any indebtedness to the company on the policy should be a valid and prior lien thereon. The semi-annual premium falling due on July 30, 1899, was not paid, nor was the note due by Sudduth to the company; and he died the following November. This action was brought to recover on the policy.

Among other provisions the policy contained the following: "Provided, that in case the said premiums shall not be paid on or before the several days hereinbefore mentioned for the payment thereof at the office of the company in the city of Newark or to agents when they prduce receipts signed by the president or treasurer, then in every such case this policy shall cease and determine, subject to the provisions of the company's nonforfeiture system, as indorsed hereon with accompanying table." Sudduth failing to pay the semi-annual premium falling due on July 30, 1899, the policy, by its terms, ceased, unless it was saved by the nonforfeiture provisions thereon indorsed. The nonforfeiture clause, as originally indorsed on the policy, was, on March 24, 1896, changed by the consent of parties, and another substituted for it. The rights of the parties must be determined by the substituted agreement, which is in these words:

"In consideration of the release (copy of which is indorsed hereon) of the nonforfeiture provisions hereto applicable to policy No. 137,661, on the life of Watson A. Sudduth, the Mutual Benefit Life Insurance Company hereby agrees that the following nonforfeiture provisions shall apply thereto as if originally incorporated in and indorsed upon said policy:

"'Nonforfeiture Provisions.

"'When, after two full annual premiums shall have been paid on this policy, it shall cease or become void solely by

**766** KENTUCKY REPORTS. [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

the nonpayment of any premium when due, its entire net reserve by the American Experience Mortality and interest at four per cent. yearly (provided there be no loan on the policy) shall be applied by the company as a single premium at the company's rates published and in force at this date, either, first, to the purchase of nonparticipating term insurance for the full amount insured by this policy, or, second, upon the written application by the owner of this policy and the surrender thereof to the company at Newark within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy payable at the time this policy would be payable if continued in force. Both kinds of insurance aforesaid will be subject to the same conditions, except as to payment of premiums, as those of this policy. Third, if preferred, the company will, on surrender of the policy fully receipted within the said three months, pay as a cash surrender value its entire net reserve by the American Experience Mortality and interest at four and one-half per cent. yearly, less a surrender charge equal to one per cent. of the sum insured by the policy.

." 'If there be any loan on the policy such indebtedness shall be paid off out of the cash surrender value, and the remainder paid in cash by the company; or a value will be allowed by the company in the form of extended or paid-up insurance as above provided, the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value.

" 'If death shall occur within one year after the nonpayment of premium and during the term of extended insurance, there shall be deducted from the amount payable any premium that would have become due on this policy if it had continued in full force; also the amount of any indebt-

edness on this policy at time of such nonpayment of premium.

" 'The company will at any time the policy is in full force loan up to the limit secured by its cash surrender value upon a satisfactory assignment of the policy to the company as collateral security.

" 'The figures given in the following table are based upon the assumption that all premiums (less current dividends) have been fully paid in cash. The indebtedness, if any, may be paid off in cash, in which case the figures in the table will apply."

| At End of Year. | Cash Surrender Value. Loan Value. | In Case of Lapse of Policy. | | Paid-up Policy. |
|---|---|---|---|---|
| | | Extended Insurance. | | |
| | | Years. | Days. | |
| 9th | $421.15 | 9 | 92 | $1140 |
| 10th | 484.20 | 10 | 38 | 1265 |
| 11th | 549.60 | 10 | 312 | 1390 |
| 12th | 617.30 | 11 | 184 | 1510 |

The question involved here is one of contract. The language which evidences the contract is plain and unambiguous. This being true, the court should have but little difficulty in determining the rights of the parties to it. By the terms of the policy, where there is a loan upon it after two full premiums are paid, it shall cease and become void solely by nonpayment of any premium when due; and its entire net reserve by the American Experience Mortality and interest at 4 per cent. yearly shall be applied by the company as a single premium at the company's rate published and in force at that date, to the purchase of nonparticipating term insurance for the full amount insured by the policy. By the second nonforfeiture provision the owner of the policy had the option to apply to the company and surrender the policy to it within three months from such

nonpayment of premiums, and have the net reserve and interest at 4 per cent. yearly applied to the purchase of a nonparticipating paid-up policy payable at the time the policy would be payable if continuing in force. The insured had paid the premiums for twelve years, and, if he had not secured a loan upon the policy the net reserve so calculated would have carried the policy for something more than eleven years. On July 30, 1899, there was a loan upon the policy then amounting to $617.30, and which matured on that day; it also being the day upon which the semi-annual premium was due, which he failed to pay. The first and second nonforfeiture provisions were not available because of the loan. The third nonforfeiture provision reads as follows: "If preferred the company will, on surrender of the policy, fully receipted within the said three months, pay as a cash surrender value its entire net reserve by the American Experience Mortality and interest at 4½ per cent. yearly, less a surrender charge equal to 1 per cent. of the sum insured by the policy. If there be any loan upon the policy, such indebtedness shall be paid off out of the cash surrender value, and the remainder paid in cash by the company; or a value will be allowed by the company in the form of extended or paid-up insurance as above provided, the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value." This is the provision of the policy which must control in determining the rights of the parties.

It will be observed by the nonforfeiture provisions that, where there is no loan upon the policy, the net reserve and interest at 4 per cent. purchases the extended insurance. Where there is a loan upon the policy, it is not the net re-

serve and interest which forms the basis for extended insurance, but the cash surrender value of the policy. The cash surrender value is defined by the policy to be "its entire net reserve by the American Experience Mortality and interest at 4½ per cent., less a surrender charge equal to 1 per cent. of the sum insured by the policy." The table on the policy shows this to be $617.30; besides, the evidence likewise establishes that to be the correct amount. On July 30, 1899, the day Sudduth failed to pay the semi-annual premium on the policy, he owed exactly the amount of the cash surrender value of his policy. The net reserve under the first clause is computed on the basis of interest at 4 per cent., but under the third clause, to get the cash surrender value, on the basis of interest at the rate of 4½ per cent. From a casual examination it might seem that, the greater the rate of interest, the greater the amount would be; but it is just the contrary, as the purpose is to find the present value of the policy, which has not matured, and the present value of a sum due in the future is smaller at 4½ per cent. than at 4 per cent. The net reserve of the policy by the American Experience Mortality and interest at 4½ per cent. is $666.30. The amount of the policy being $5,000, if there be deducted 1 per cent. of the sum insured, $50, from the net reserve at 4½ per cent., there is left $617.30, the amount stated in the table. There was, therefore, on July 30th, after the payment of the note, nothing left of the cash surrender value to be applied to extended insurance; and, the premium which was then due not being paid, by the terms of the contract the policy ceased. It was understood by Sudduth and the company when the loan was made that the cash surrender value of the policy on July 30, 1899, would be $617.30; therefore the company loaned

him that amount, as it agreed to do under the nonforfeiture provisions of the policy, for it is there provided that it will "at any time while the policy is in full force loan up to the limit secured by its cash surrender value, upon a satisfactory assignment of the policy to the company as collateral security." Sudduth anticipated the cash surrender value of the policy, and drew it in advance. The basis for settlement, after the nonpayment of the premiums, when a loan has been made to the insured by the company is, as plainly stated in the nonforfeiture provisions, as it is when no loan has been made and the insured requests that he be given "a nonparticipating paid-up policy." He had the right to elect which nonforfeiture right he would accept. When he concluded to borrow from the company an amount, the exact equivalent of the cash surrender value of the policy, he could not fail to pay it and the premium, and then claim the right to extended or paid-up insurance. By borrowing the money under the terms of the policy he had exhausted the entire amount of the cash surrender value of it, and in failing to pay it and the premium he elected to settle on the basis of the cash surrender value of the policy. This is necessarily so, because he had nothing due him to purchase extended or paid-up insurance. Suppose Sudduth on July 30, 1899, had elected to take, under second option for settlement, a paid-up policy payable at his death. He certainly could not afterwards have had the right to exercise the first option, and get "nonparticipating term insurance for the full amount insured by the policy." If he could not do this, it is manifest he could not take the cash surrender value of the policy, and then claim insurance under either of the other plans. The election to exercise one of the options for settlement excludes the right to a settlement under either of the others provided in the policy. Sudduth did

not demand a settlement under either the first or second nonforfeiture clause. Suppose he had done so. Presumably, the parties would have read from the nonforfeiture provisions the clause as follows: "If there be any loan on the policy, such indebtedness shall be paid off out of the cash surrender value, and the remainder paid in cash by the company; or a value will be allowed by the company in the form of extended or paid-up insurance as above provided, the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value." Then they would have ascertained the insured's indebtedness to the company to be $617.30. After deducting the surrender charge equal to 1 per cent. of the sum insured by the policy, the cash surrender value would have been found to be exactly $617.30. It would have demonstrated that he did not have one cent coming to him with which to pay for extended insurance or a paid-up policy. Of course, the company would have refused to have given him extended insurance or a paid-up policy, because there was nothing due the insured to purchase the same. After making the deduction there was no cash due the insured, so there was no value for the company to allow in the form of extended or paid-up insurance; hence the policy was not in force when he died. To so hold does not work a forfeiture of any of the insured's rights, but gives him all the rights which the company contracted to give him, and such as he agreed to accept. There is no element of forfeiture in the case. The three options given by the nonforfeiture provisions presumably were of equal monetary value. As to whether the insured would take one or the other depended entirely upon himself. If he did that which, by the express terms of his contract, showed he elected to take one instead of another, it can not

be said he forfeited any right, but rather that he made a choice of rights or privileges thereunder. Sudduth simply withdrew from the company, and used money which he might have left with it as a protection for the future in case he failed to pay a premium. It does not claim a forfeiture of the policy for the failure to pay the note, but that the policy ceased to bind it upon the nonpayment of the premium. When this took place, then the nonforfeiture provisions became operative, and the rights of the parties should be determined thereby. That he might exercise the right as fully as he did, he procured the company to substitute the present nonforfeiture provisions for those which the policy originally contained. Appellant seeks the enforcement of the terms of the contract, which are not doubtful or uncertain in meaning. Judge Peckham delivered the opinion of the court in Holly v. Metropolitan Life Insurance Company, 105 N. Y., 442, 11 N. E., 510, in which it is said: "If language as plain and unambiguous as this is not only to be twisted out of its natural meaning, but is to be wholly ignored, by the courts of justice, it will be useless in the future for companies to make any effort to bind policy holders to perform their contracts. The use of language is to express ideas, and writing is resorted to in order to furnish conclusive proof of what language was used. Being certain of the language used, and the case being free from fraud or mistake, if such language is plain and susceptible of but one meaning, that meaning, even in cases of contracts regarding life insurance, must control." There was nothing unjust in the fact that the policy allowed 4 per cent. reserved, or $718.30, if that sum be used for extended or paid-up insurance; whilst it fixed a value of $617.30 to be paid to the policy holder in case of lapse. The company doubtless regarded the benefit which it hoped to derive

by the policy holder taking extended or paid-up insurance instead of cash, as being a good business reason for allowing $718.30 in the purchase of such insurance. The cash surrender value of the policy was not diminished because of the loan which the company made to Sudduth. If it was not, then the transaction was not usurious. If no loan had been made, the cash surrender value of the policy on July 30, 1899, by its terms, was $617.30, and Sudduth could only have withdrawn that amount.

It is also urged that the insurance company, having assented to the assignment to the appellee, is estopped to make the defense now relied on. Appellee had no notice there was a loan on the policy, and·was informed by Sudduth, when he assigned the policy to it, that the policy was good for something over eleven years if he paid nothing more on the premiums, but there were then the following indorsements on the policy: "July 14, 1898, the existing indebtedness to the company on this policy is $549.60 (interest at 6 per cent. from July 30, 1898), as evidenced by the certificate of loan in the company's possession. Paid off January 30, 1899, out of new loan. M. B. L. I. Co., per G. H. C." "January 30, 1899, the existing indebtedness to the company on this policy is $599.32 (with interest at 6 per cent. from January 30, 1899), as evidenced by the certificate of loan in the company's possession." Appellee's agents failed to observe these indorsements, but being on the policy at the time of the assignment, appellee took subject to them. While the contract above quoted stipulated that the company would loan on a proper assignment of the policy, it was not required to take an assignment. The policy was the obligation of the company to the assured. It was, therefore, properly held by him, and the indorsements on it were notice to all persons dealing with it that a loan had been

**774** KENTUCKY REPORTS. [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

made on it. No notice was given to the bank as to the maturity of the premium. It was given to Sudduth, which was sufficient, if a notice was necessary at all. Counsel relies upon section 653, Kentucky Statutes, 1899, as prescribing how policies shall be valued; but this is only for the guidance of the insurance commissioner in determining the solvency of the company, and has no application to a contract like the one under consideration. The cases of St. Louis Mutual Life Insurance Company v. Grigsby, 73 Ky., 310; Northwestern Mutual Life Insurance Company v. Fort's Adm'r, 82 Ky., 269, 6 R., 271; New York Life Insurance Company v. Curry, 24 R., 1930, 72 S. W., 736, and other cases resting upon the same principle, are not in conflict with the conclusions in the case at bar. In those cases the default was in the payment of a note or interest, not in the nonpayment of the premium. In this case the insured received the full amount he was entitled to under the plan of settlement which he elected to adopt, which does not appear to have been done in those cases. In this case the settlement is made in conformity to the contract of insurance.

The judgment is reversed for proceedings consistent with this opinion.

Judge Hobson delivered the following dissenting opinion:

It is conceded that by the terms of the contract the policy ceased when Sudduth failed to pay the note or the premium due on July 30, 1899. But back of this is the question whether the contract to this effect is such as the courts of this State will enforce. A distinction must be made between the rights of appellant as insurer and its rights as money lender. If there had been no

loan on the policy, it would have continued in force, notwithstanding the nonpayment of the premium, something over eleven years. It has been held in a number of cases that the court will not enforce a penalty for the nonpayment of a debt, and thus bring about a forfeiture of the policy. In St. Louis Mutual Life Ins. Co. v. Grigsby, 73 Ky., 310, Grigsby's life was insured in the sum of $10,000 by a policy issued August 16, 1867, in consideration of the payment annually for ten years of a premium of $690.60. It was stipulated that, if default was made in the payment of any premium, such default should not work a forfeiture of the policy, but it should be reduced to such proportionate part, of the sum insured as the sum of the annual payments made bore to the sum of the ten annual payments stipulated for. It was also provided that, if Grigsby failed to pay annually in advance the interest on any unpaid note or loan on account of any of the annual premiums, the policy should cease and determine. Grigsby paid the initial premium of $690.60 in 1867. He also paid one-half the premium for 1868 and 1869, and executed his notes for the other half. He failed to pay the premium for the year 1870, or the interest on his notes. In November, 1870, by a written contract, the policy was renewed and continued in force for the commuted amount of $3,000 until August 16, 1871. Grigsby then paid the amount required of him by the company, and executed notes for the remainder, but he failed to pay the interest due on his notes on August 16, 1871, and after this died on January 2, 1872. The court enforced the policy. It said: "We are satisfied from the nature of the contract that the forfeiture was intended as a penalty to secure not the ultimate but the prompt payment of the interest to become due, and, as the default is only in time, and the company can be given all that it stip-

ulated to receive, a case is presented in which relief can and ought to be afforded." In Northwestern Mutual Life Ins. Co. v. Fort's Adm'r, 82 Ky., 269, 6 R., 271, where the failure to pay the interest on a premium note was likewise relied on to defeat a recovery on the policy, the court, referring to the case above cited, said: "Here the default, if any has occurred, is not of the substance of the contract, but in time of the payment of interest, and the company can be given all that it stipulated to receive. On the other hand, to forfeit the whole policy on account of default in time of payment of the interest, which formed but a small part of the consideration, and which the company is fully secured in the ultimate payment of, if not already paid, would impose upon the insured the entire loss of the premiums actually paid. A forfeiture under such circumstances would be extremely oppressive, and, if provided for in a contract between individuals concerning any ordinary business transaction, be held as in the nature of a penalty. And, as we are unable to perceive any reason for changing or relaxing the rule in respect to contracts about the business of life insurance, the forfeiture provided for in this case must be likewise so held." In New York Life Ins. Co. v. N. L. Curry et al., 24 R., 1930, 72 S. W., 736, the assured held a paid-up policy for $630. He borrowed $130, pledging the policy to secure the loan, and signed a writing to the effect that, if he failed to pay the interest on the loan, the policy should be surrendered to the company at its customary cash surrender value, and in that case it should be liable to him for the balance only of the cash surrender value after deducting the loan and interest and any expenses incurred. The interest was not paid. The company claimed that the policy was terminated, and after eight months refused to reinstate the policy upon the payment of the debt. The court

said: "By the terms of this writing, if the loan or its interest was not repaid when due under the loan agreement, the policy was to be surrendered to the insurer 'at the customary cash surrender value then allowed by said party for the surrender of policies of this class.' This is pure and simple a provision for the forfeiture of the policy upon such terms as the payee of the note may require, and at its option. The difference between this and ordinary unqualified forfeiture lies alone in the extent of the forfeiture. It operates as an enforced conversion without further notice to or consent of the borrower of his collateral if he fails to meet promptly the payment of interest upon his debt. . . . Appellant, as a money lender, stands under the law precisely as any other lender of money. Its charters and privileges as a life insurance company can not affect its other quality as a money lender. If it loans money on its policies held by its policy holders, its rights as lender are exactly what they would be if, instead of the policy, the borrower pledged stocks, bonds, or policies in other companies, or gave a chattel or real estate mortgage to secure the loan." Along the same line, and resting upon the same principle, are Montgomery v. Phoenix Mutual Life Ins. Co., 77 Ky., 51; Mutual Life Ins. Co. v. Jarboe, 102 Ky., 80, 15 R., 1901, 42 S. W., 1097, 39 L. R. A., 504, 80 Am. St. Rep., 343; Manhattan Life Ins. Co. v. Patterson, 109 Ky., 624, 22 R., 1282, 60 S. W., 383, 53 L. R. A., 378; Washington Life Ins. Co. v. Miles, 23 R., 1705, 66 S. W., 740.

The case before us differs from those cited in the following particulars: (1) Here there was a default in the payment of a premium, as well as of the note. There the default was only in the payment of a note. (2) Here the amount of the note was equal to the cash surrender value of the policy as fixed by the company. This does not appear

in any of the cases cited. (3) Here the agreement as to the termination of the policy is contained in the same contract that provides for the extended insurance, and not in a supplementary contract. (4) In those cases the assured held or was entitled to a paid-up policy.

1. While there was a default, both in the payment of a premium and of the note, if the note had been paid the default in the premium would not have affected the policy, for, if there had been no loan, the policy would have been extended for something over eleven years. It was not, therefore, the failure to pay the premium that terminated the policy, for this would not have mattered but for the nonpayment of the note.

2. In some of the cases nothing is said about the cash surrender value or its amount. But, aside from this, the cash surrender value is fixed by the company as the amount at which it will take the policy under any circumstances on the application of the insured. The policy may be of much greater value, for the cash surrender value does not purport to be the real value of the policy. By statute in this State policies are valued under the American Experience Mortality, with interest at 4 per cent. Kentucky Statutes, 1899, section 653. It must be presumed that policies are ordinarily worth this. On this basis the policy in contest was of cash value $718.30. Under special circumstances they are often worth practically their face value, as where the health of the insured has failed. If Sudduth had paid his note of $617.30 on July 30, 1899, his policy would have been extended over 11 years. The failure to pay the note, if it gave the company an absolute right to terminate the policy by applying its cash surrender value to the payment of the note, can not be distinguished from a like contract as to any other collateral pledged to secure a debt with a provision in the

contract that, if the debt is not paid, the collateral shall vest in the creditor at a price fixed by the contract in advance.

3. It is settled by the cases above cited that, where the right to continued insurance has been acquired, a contract for the termination of the policy on the nonpayment of a debt will not be enforced. The reason for the rule is that the law will not suffer the lender to impose on the borrower. The form of the transaction is immaterial. The court will not allow any disguise or mere form to defeat the rule. Here Sudduth had acquired a right to continued insurance on March 24, 1896, when the substituted contract was made; and by the terms of that contract when he had paid in July, 1897, the full annual premium for ten years, as there was then no loan on the policy, he had the right to extended insurance without paying anything more for ten years and thirty-eight days. In July, 1898, when he originally negotiated the loan, he had the right to continued insurance, by the terms of the contract, for ten years and 312 days, as there was until then no loan on the policy. This right to continued insurance for over ten years, which he had acquired before the loan was made, he continued to have until his death, unless he lost it by the bare fact that he afterwards secured a loan on the policy. When the loan matured, he did not elect to take up his note and surrender the policy to the company. The following correspondence took place between them looking to Sudduth's paying part of the premium and giving a new note:

"July 30, 1899.

"The undersigned, the party assured under policy No. 137,661 in the Mutual Benefit Life Insurance Company, hereby requests that the cash due July 30, 1899, be settled by premium loan.              Watson A. Sudduth."

"Louisville, Ky., August 23, 1899.

"Mr. W. A. Sudduth, Fifth & Court Place, City—Dear Sir: Upon return of policy No. 137,661, the inclosed certificate of loan signed by yourself and the outstanding assignment to the First National Bank of Louisville, canceled by the bank, the company will now increase the policy loan from $599.32 to $633.30, applying the increase in part payment of the premium due the 30th ult., provided the remainder of the premium, $31.85 be paid in cash. The seal of the bank should be attached to the cancellation of its assignment.

"Yours truly,          K. W. Smith & Co."

The letter of Smith & Co. was written in accordance with instructions from the home office, to which in the meantime the application of Sudduth had been sent. Sudduth did not comply with this proposition, and, though there were some other propositions made subsequently, they were not accepted by him, and matters stood as they were until he was taken sick in November following, when the bank offered to pay both the premium and the note, but the company refused to accept the money. If a bank had made a contract with Sudduth to lend him $617.30, and had provided in it that, if the note was not paid, it should have the policy absolutely, or the entire benefit of it, there, would be no doubt that the contract would not be enforced. The fact that the insurance company made the loan to one who held a policy in the company on his own life can not put it in a better position than if the policy had been in another company, and had been hypothecated for the loan. The substance of the transaction is that the insurance company lent its policy holder $617.30 on his policy. When the note matured, and was not paid, the relation of debtor and creditor existed between them on the note, and the policy was

**Vol. 115]** APRIL TERM, 1903. 781

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

the collateral securing the obligation. A stipulation in a contract that in this event the insurance company should have the right to cancel the policy if the note was not paid, could not be enforced. But that is, in substance, the case we have; for, if the amount of the note is subtracted from the cash surrender value, nothing is left, and, if the cash surrender value is paid by the company in the cancellation of the note, the policy is at an end.

4. In the cases cited the assured had paid for insurance during his life. Here the assured, when the loan was obtained, had paid for insurance for a term of years. No sound distinction can be made between this case and those, because the insurance there had been paid for during the life of the assured and here for a term of years, which might exceed the limit of his life; for in either case the assured had a definite right to insurance—a vested right— which continued far beyond Sudduth's death, unless it was divested in his lifetime. It was suggested on the argument that he consumed the fund which he had thus provided for extended insurance, and in illustration it was said that one can not keep his cake and eat it, too. But the difficulty is that Sudduth ate no cake. He only got a loan. If the company had paid him a sum of money absolutely in extinguishment of his right to continued insurance, the argument for appellant would apply. But this it did not do. It only lent him the money, and he was under obligation to pay the money back, with interest at 6 per cent. The interest on the money is the only consideration which our statute allows to be paid for its use. All contracts for a greater consideration for the use of money, direct or indirect, are declared void. Kentucky Statutes, 1899, section 2219. The purpose of the statute is to prevent lenders from making hard contracts with borrowers, and the agreement by Sud-

782 KENTUCKY REPORTS. [Vol. 115

Mutual Benefit Life Ins. Co. v. First Nat. Bank of Louisville, &c.

duth to forego his right to extended insurance, which he had then absolutely for a term of years extending beyond the time of his death in consideration of the loan, besides the lawful interest on the money, was both within the letter and mischief of the statute. When the note matured, the company had a legal demand against Sudduth for the amount of the note, and this it could enforce. He could, at his election, cancel his policy at its surrender value, and apply the proceeds to the payment of his note. But this he did not do. The company continued to hold the note until his death, and therefore continued to hold the demand against him for the money. His assignee, the First National Bank, held the policy. Sudduth had a right to pay his note, and save his policy, for the election was in him to cancel at the surrender value or not. The company did not tender the note or demand the policy. It therefore stood simply as a lien creditor, and it could not, on the non-payment of the note, appropriate the debtor's property at a price fixed by it in advance; for it can not be permitted to impose more onerous conditions upon its policy holders who borrow from it and fail to pay, than other lenders of money may impose upon their debtors.

It is, however, provided in the contract that, if the death of the assured occurred within one year after the nonpayment of a premium, and during the term of extended insurance, there should be deducted from the amount payable such premium, as well as the amount of any indebtedness of the assured to the company on the policy. This was a reasonable provision, for otherwise one who was in bad health might risk his not surviving the year, and thus profit by his own violation of the contract. The amount of the premium due July 30th was not subtracted in the judgment.

This was error. The credit should have been given as well for the premium and interest from the time it was due as for the note.

With this modification, the judgment complained of seems to me correct. I therefore dissent from the opinion of the court.

Judges Nunn and O'Rear concur in this dissent.

Petition for rehearing by appellees overruled.