CASE 60.—ACTION BY GEORGE EMIG'S ADMINISTRATOR AGAINST THE MUTUAL BENEFIT LIFE INSURANCE CO. ON A POLICY IN SAID COMPANY ON THE LIFE OF DECEDENT.—December 18.

## Emig's Admr. v. Mutual Benefit Life Ins. Co.

Appeal from Campbell Circuit Court.

A. S. Berry, Circuit Judge.

Judgment for defendant, plaintiff appeals — Reversed.

1. Insurance—Life Insurance—Dividends.—An insured in a life policy, dated March, 1893, providing for dividends, who borrowed money from the insurer for premiums due March, 1902, and who defaulted in the payment of subsequent premiums, is entitled to the dividends on his policy for the year 1903 in computing the amount available for extended insurance as provided in the policy.

2. Same—Borrowing Amounts of Premiums.—An insurance company in lending money to its policy holders occupies the same position as any other money lender, and is entitled only to collect the debt with 6 per cent. interest, and a contract allowing it to demand more will not be enforced.

3. Usury—Statutes—Enforcement.—The laws against usury prohibiting schemes resorted to by lenders to enable them to

Emig's Admr. v. Mutual Benefit Life Ins. Co.

charge more than the legal rate of interest are rigidly enforced, and no plan will be allowed to defeat them.

4. Insurance—Life Insurance—Extended Insurance.—Where a life policy stipulated that if it should become void by the non-payment of any premium the entire net reserve should be applied for the purchase of extended insurance, a provision that if there was any loan on the policy the indebtedness should be paid out of the cash surrender value and the remainder paid in cash or applied for the purchase of extended insurance was void, because discriminating against a policy holder in debt to the insurer, and where an insured borrowed money from the insurer for the payment of the premiums and did not repay. it and defaulted in the payment of future premiums, the insurer must ascertain the amount of the net reserve and deduct from it•the amount of the debt and interest and use the balance for the purchase of extended insurance.

L. J. CRAWFORD, HAZELRIGG, CHENAULT & HAZELRIGG and R. A. NAGEL for appellant.

DODD & DODD and W. O. HARRIS for appellee.

(No briefs—Record misplaced.)

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On March 20, 1893, the appellee company issued to George Emig a policy upon his life for the sum of $5,000, in consideration of $195, paid by him, and the agreement to pay annually a premium of $195 on the 20th day of March in every year during the continuance of the policy. The policy was an ordinary life policy, and was made payable to the insured. It contained several stipulations as to nonforfeiture, extended insurance, loan and cash surrender value; but, as in 1897 a new contract was made, and this substituted contract was in force from that time until the death of Emig, we will treat it as the contract

under which the rights of the parties must be adjudicated. The contract of 1897 is as follows:

"* * * When after two full annual premiums shall have been paid on this policy it shall cease or become void solely by the nonpayment of any premium when due, its entire net reserve by the American experience mortality and interest at four per cent. yearly (provided there be no loan on the policy) shall be applied by the company as a single premium at the company's rates published and in force at this date, either, first, to the purchase of nonparticipating insurance for the full amount insured by this policy, or, second, upon the written application by the owner of this policy and the surrender thereof to the company at Newark within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy payable at the time this policy would be payable if continued in force. Both kinds of insurance aforesaid will be subject to the same conditions, except as to payment of premiums, as those of this policy. Third, if preferred the company will on the surrender of the policy fully receipted within the said three months pay as a cash surrender value its entire net reserve by the American experience mortality and interest at four and one-half per cent. yearly, less a surrender charge equal to one per cent. of the sum insured by the policy.

"If there be any loan on the policy such indebtedness shall be paid off out of the cash surrender value, and the remainder paid in cash by the company; or a value will be allowed by the company in the form of extended or paid-up insurance as above provided, the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value.

"If death shall occur within one year after the nonpayment of premium and during the term of extended insurance, there shall be deducted from the amount payable any premium that would have become due on this policy if it had continued in full force, also the amount of any indebtedness on this policy at time of such nonpayment of premium.

"The company will at any time while the policy is in full force loan up to the limit secured by its cash surrender value upon satisfactory assignment of the policy to the company as collateral security.

"The figures given in the following table are based upon the assumption that all premiums (less current dividends) have been fully paid in cash. The indebtedness, if any, may be paid off in cash, in which case the figures in the table will apply:

| At End of Year. | Cash Surrender Value. Loan Value. | In Case of Lapse of Policy. | | |
|---|---|---|---|---|
| | | Extended Insurance. | | Paid-up Policy. |
| | | Years. | Days. | |
| 5th | $400 00 | 5 | 218 | $1 880 |
| 6th | 497 55 | 6 | 134 | 1,050 |
| 7th | 596 95 | 7 | 8 | 1,210 |
| 8th | 698 30 | 7 | 206 | 1,370 |
| 9th | 801 50 | 8 | 2 | 1,525 |
| 10th | 906 45 | 8 | 130 | 1,675 |

Having paid the first premium when the policy was issued, Emig began to borrow money from the company to meet his subsequent premiums until on March 20, 1902, he owed the company $854.35. He defaulted in the payment of the premium which fell due March 20, 1903, and also in the one that became due March 20, 1904, and died on June 1, 1904. By the default in the payment of the premium on March 20, 1903, his

policy became forfeited unless it was kept alive until his death by the nonforfeiture system set out in the contract heretofore mentioned.

·It will be observed that a clause in this contract provides in part that "if there be any loan on the policy, such indebtedness shall be paid out of the cash surrender value and the remainder paid in cash by the company." It being conceded that on March 20, 1903, Emig owed the company $854.35, with interest from March 20, 1902, and that he defaulted in the premium due March 20, 1903, it is the contention that on that date he was only entitled to the cash surrender value of the policy, less the loan. The cash surrender value on March 20, 1903, according to the calculation made by the company, and which is shown by the table, was $906.45, and the loan and interest to that date being $905.61, it only left due Emig on that day 84 cents.. It is further insisted for the company that if the other paragraph of this clause is put into operation, which provides, "or a value will be allowed by the company in the form of extended or paid-up insurance as above provided, the amount to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash surrender value," that the net reserve of the policy by the American experience mortality and· interest at 4 per cent. was on March 20, 1903, $1,001.95, and that, reducing this in the ratio of the indebtedness to the cash surrender value, left only 90 cents to be applied to the purchase of extended insurance at the company's rates published and in force at the date of the policy, which sum would have purchased insurance for $5,000, for two days and no longer. So that, in either event, looking at the matter from the com·

pany's standpoint, Emig is not entitled to recover more than 84 cents.

Emig's administrator insists that the provisions relied on by the company are against public policy and void, and that he is entitled to recover $5,000, less the amount of the note and interest thereon, and the premiums due in 1903 and 1904. It does not appear that Emig made any election, or requested or demanded any settlement of any kind from the company, and so the matter stood from 1903 until this suit was brought, when the company for defense set up that it did not owe Emig anything.

In the body of the policy it is provided that "in case the premiums shall not be paid on or before the several days hereinbefore mentioned for the payment thereof * * * then and in every such case this policy shall cease and determine, subject to the provisions of the company's nonforfeiture system as indorsed hereon with the accompanying table;" and further, "this policy while in force will participate annually in the company's distribution of surplus, and after two years will be incontestable except for nonpayment of premiums." The company does not distinctly claim a forfeiture of the policy by reason of the nonpayment of the note; but it insists that because of Emig's failure to pay the premium due on March 20, 1903, it had the right under the contract to deduct from the sum then due him on the policy ascertained according to its method of calculating the amount of its note and interest, and by this process a forfeiture was in effect accomplished.

It is true the contract gave it the right to make the character of settlement it did, but it remains to be seen whether or not the provisions of the contract under which the company elected to settle with Emig.

vol 127—38

are valid and enforceable, or void as against public policy. In brief, the question is, will provisions of a policy be upheld that give an insurance company the right to settle on a different plan with a borrowing policy holder from that adopted with the policy holder who is not a borrower, thereby enabling it to exact more than its debt and legal interest? Under the contract, if Emig had not been a borrowing member, after he had paid two full annual premiums the entire net reserve by the American experience mortality and interest at 4 per cent. yearly would be applied by the company as a single premium at the company's rates to the purchase of non-participating insurance for the full amount insured by the policy, or, upon his written application for the reserve would have been applied to the purchase of a nonparticipating paid-up policy, or, at his election the company would pay as the cash surrender value of the policy its entire net reserve by the American experience mortality with interest at 4½ per cent. yearly, less a surrender charge equal to 1 per cent. of the sum insured by the policy. But, if a policy holder happened to be at the same time a borrower from the company, and had defaulted in the payment of a premium, then the company under the contract had the right to deduct the indebtedness out of the cash surrender value and pay the balance in cash, or allow a value in the form of extended or paid-up insurance, the amount of such value to be applied to the purchase of such insurance being correspondingly reduced in the ratio of the indebtedness to the full cash value. It will thus be seen that the borrowing and the nonborrowing members are not treated alike; that the nonborrower has advantages and privileges that are not allowed the borrowing member. To

illustrate, if on March 20, 1903, Emig had not been indebted to the company, and had defaulted in the annual premium then due, he would have been entitled to demand from the company nonparticipating term insurance for the full amount of his policy for such period as the same could be purchased by its entire net reserve by the American experience mortality and interest at 4 per cent. yearly, or he could have demanded that the net reserve be applied to the purchase of a nonparticipating paid-up policy. But, being a borrower from the company, it claims the right to settle with him on an entirely different basis, and one that does not secure the benefits as a nonborrower he could have demanded. It must be kept in mind that the cash surrender value of the policy as fixed in the tables and under which the company settled its account on March 20, 1903, with Emig, is not the full value of the policy that he would have received if he was not a borrower. By its settlement the company did not deduct the amount of Emig's note with 6 per cent. interest and give him extended insurance for the time he was entitled to it. It arbitrarily adopted a method by which it exacted from him more than his debt and interest by failing to allow him credit for the full amount to which he was entitled.

To make plain the manner in which Emig was discriminated against, and the fact that the company exacted in the settlement it made more than the amount of its debt and legal interest, it is only necessary to direct attention to the admissions in the answer which show that the net reserve of the policy by the American experience mortality and interest at 4 per cent. was on March 20, 1903, $1,001.95; whereas the cash surrender value on that date was

only $906.45. Electing as it did to take the amount
of Emig's debt and interest, $905.61 from the $906.45,
only left 84 cents due the assured. When if the debt
had been deducted from the net reserve of the policy,
which was $1,001.95, there would have been due him
$95.50; but, upon a fair settlement, the amount due
him would have been more than this because he was
entitled to the dividend on his policy ·for the year
1903, which was not allowed him in fixing the amount
at $1,001.95, as this sum only includes the dividends
to March, 1902. Mutual Benefit Life Ins. Co. v. Davis,
115 Ky. 401, 24 Ky. Law Rep. 2231, 73 S. W. 1020.
In computing under the other clause by which it
allowed him a value to be applied to the purchase of
extended or paid-up insurance, and finding that there
was only due him 90 cents, it reduced the net reserve
in the ratio of the indebtedness to the cash surrender
value of the policy, and again discriminated against
him and exacted more than the amount of the debt
and legal interest.

We are wholly unable to perceive why an insurance
company should be allowed to discriminate between
its policy holders in this manner or exact indirectly
more than legal interest. In lending money to its
policy holders an insurance company occupies exactly
the same attitude as any other money lender. It is
entitled to demand and collect the amount of its debt
with 6 per cent. interest thereon, and no more. It
is true the contract allows it to demand more than
this, and the right to require the borrowing member
to pay a larger sum than his debt and interest; but
this character of contract, no matter how carefully
it may be worded, or how skillfully devised, will not
be enforced. When the company lends money and
takes as security for the loan a policy that amply

secures it, there is no reason why it should be allowed privileges or rights not extended to ordinary money lenders. Our laws against usury, and other devices and schemes resorted to by lenders to enable them to charge debtors more than the legal rate of interest, are rigidly enforced, and no plan, however ingenious, will be allowed to defeat them.

Viewing the matter from this standpoint, what were the rights of the respective parties on March 20, 1903, when Emig defaulted in the payment of the premium then due? He owed the company $854.35, with interest thereon from March 20, 1902, and the company as security for this had a lien upon his policy. On that date the company had the right to ascertain the amount under the contract that Emig, treating him as a nonborrower, was then entitled to, which was the entire net reserve by the American experience mortality and interest at 4 per cent. yearly, and to deduct from it the sum of his note and interest, and for the difference, if any, he was entitled—as he made no election—to extended insurance for the full amount of his policy for such period as this balance would carry it. If on March 20, 1903, Emig had not been a borrower from the company, the premiums he had paid would under the contract and tables have carried his insurance for the full amount for 8 years and 130 days. But, being a borrower, with his policy pledged to the company as security for the loan it had the right on that day to demand the payment of its loan and give Emig on the basis herein indicated nonparticipating term insurance for the balance due. The fact that Emig had paid a sufficient number of premiums to carry his insurance 8 years and -30 days, did not give him the right to insist that the company must carry his full insurance for that period of time

and take out of it if he died within that period the amount of his debt with interest. This conclusion would give the insured the unreasonable advantage of having the full amount of insurance in force for a period of 8 years and 130 days, during all of which time he would be indebted to the company in the full amount of the loan value of his policy, and this without the payment of either premiums on the policy or interest on his note. The result would be that Emig's debt would be increasing and the value of his policy decreasing, until at the expiration of the 8 years and 130 days the company would have his note and as security a policy without value. To put it in another way, if he had outlived the period of extended insurance, the policy that the company accepted as security for the note would have lapsed entirely and been of no value, and consequently the company would have no security for the money advanced on it if the insured was insolvent, and yet the insured during this time would have had in his pocket practically the full value of the policy and on his life insurance for the full amount of the policy. Jagoe v. Aetna Ins. Co., 96 S. W. 598, 29 Ky. Law Rep. 984; Penn Mutual Life Ins. Co. v. Barnett's Adm'r, 96 S. W. 1120, 29 Ky. Law Rep. 1234. But provisions in a policy that give the company the right to take undue advantage of the insured, or that allow it the right to arbitrarily adopt a method by which it may indirectly exact from a borrowing member more than the debt and interest due by him, or to settle an indebtedness upon an erroneous and unfair basis, and one that will in effect work a forfeiture of the policy, will not be enforced. They are against public policy and void. New York Life Ins. Co. v. Curry, 115 Ky. 100, 24 Ky. Law Rep. 1930, 72 S. W. 736, 61

L. R. A. 268, 103 Am. St. Rep. 297; Mutual Life Ins. Co. v. Twyman, 89 S. W. 178, 28 Ky. Law Rep. 167. These principles do not, of course, deny to an insurance company the right to declare a policy forfeited or lapsed for nonpayment of premiums, or prevent it from providing options in its policy between which the insured may elect and that will bind him when an election has been made. These are reasonable conditions, and are not in the same class as the carefully adopted clauses that discriminate against borrowing members.

In support of its right to settle with Emig in the manner it did, the company relies upon the case of Mutual Benefit Life Ins. Co. v. First National Bank, 115 Ky. 757, 74 S. W. 1066, 25 Ky. Law Rep. 172. There the contract and policy contained the same provisions as the one in the case at bar, in fact it was issued by the same company. Sudduth, who was the policy holder and who had paid the premiums for 12 years, borrowed from the company on the policy $599.32, payable July 30, 1899, on which date his note fell due, but neither the note nor premium was paid. Sudduth died the following November. In a suit on the policy the company set up the defenses that are here made—the only difference being that here the company found a ballance due Emig of 84 cents, whereas in the Sudduth Case the amount of the note and interest was exactly the amount of the cash surrender value of the policy. This court—three of the judges dissenting—held that the company was entitled under the contract to make a settlement similar to the one made by the company with Emig.

The case of New York Life Ins. Co. v. Meinken's Adm'r, 80 S. W. 175, 25 Ky. Law Rep. 2113, also relied on by appellee, is not in point. It appeared that

on November 8, 1893, the appellant insured the life
of Meinken for $2,500, in consideration of $59.50
payable annually on the 8th of November in each
year. The policy provided for extended insurance.
The annual premiums were paid for the first three
years in cash, and entitled the insured under the
tables contained in the policy to extended insurance
for the full amount of the policy up to April 8, 1899,
or if he demanded it paid-up insurance for $167.
Meinken defaulted in the payment of a premium note
due in 1897, and died in February 1901. In a suit
by his administrator to recover $2,500, the full amount
of the policy, the company denied liability, and alleged
that the premiums paid did not carry the policy under
the terms of the contract up to the date of the death
of the insured, and that the policy had lapsed. In
the course of the opinion, this court said: ''In case
of default in the payment of the annual premium, the
insured had two options, first, the policy provided
that he should be entitled to extended insurance for
the full amount of the policy for a definite period,
or, second, that if the insured should make demand
therefor, and surrender the policy within six months
after default, he was entitled to paid-up insurance
for a stipulated sum. But he could not claim both
of these surrender values. Having failed to demand
paid-up insurance, the policy by its terms continued
in force for the full amount of $2,500 for a definite
period, but which had expired before his death.''
Here it will be observed that the insured defaulted
in the payment of a note given for the premium, which
was in effect the same as if he had failed to pay a
premium, and the court held that, having failed to
make an election within six months or at all, the
company under the terms of the policy gave him

extended insurance for the full amount for the full period to which under the tables he was entitled to extended insurance, and under the tables he was only entitled to extended insurance to April 8, 1899; and, consequently, as said by the court: "Having failed to demand paid-up insurance, the policy was by its terms continued in force for the full amount of $2,500 for a definite period, but which had expired before his death."

Nor is Mutual Benefit Life Ins. Co. v. Harvey, 117 Ky. 834, 25 Ky. Law Rep. 1992, 79 S. W. 218, authority for appellee. In that case Harvey paid the first five annual premiums on his policy, but failed to pay the one due in November, 1892, and the policy lapsed in accordance with its terms at that date. Harvey died in 1902. Suit was brought against the company to recover $507, the amount of paid-up insurance, which under the contract it was claimed Harvey was entitled to in November, 1892, when he defaulted in the payment of premiums then due. The contract of insurance provided that the policy holder if after paying two full premiums defaulted in the payment of a premium, the amount due him should be applied "first to the purchase of nonparticipating term insurance for the full amount insured by this policy, or, second, upon the written application by the owner of this policy and surrender of the policy, to the company at Newark within three months from such non-payment of premium, to the purchase of a nonparticipating paid-up policy payable at the time this policy would be payable if continued in force." In its answer the company averred that as no written application was made for paid-up insurance it gave to Harvey nonparticipating term insurance for the full amount of the policy for 3 years and 134 days, this

being the extended insurance which the amount due him would purchase. The court, in ·upholding the contention of the company, said: ''It will be observed · that the nonforfeiture provisions of the policy provided that the insured shall be entitled to the first-named, or term, insurance, for the full amount of the policy, unless he makes application and surrenders his policy at his default. But he failed to make such application. And there can be no question under the terms of the policy that such application and surrender by the beneficiaries of the policy is a condition precedent to the issual of paid-up insurance; otherwise it became the duty of the company without application or request to set aside for the benefit of the insured extended insurance for the full amount of the policy.''

It will therefore be observed that in the Meinken and Harvey Cases the insured failing to elect which option they would accept, the company made the only election it was authorized by the contract to make, and this election the court held binding on the insured.

There is no conflict between the doctrine announced by us in the case at bar and the opinions in these cases. We do not hold that there may not be options given in a policy, nor that if the insured fails to elect the company may not make an election for him. We are dealing distinctly with the rights of a borrowing member, and the principles announced are fully sustained by the opinions in Mutual Benefit Life Ins. Co. v. Davis, 115 Ky. 404, 24 Ky. Law Rep. 2231, 73 S. W. 1020; Penn Mutual Life Ins. Co. v. Barnett's Adm'r, 96 S. W. 1120, 29 Ky. Law Rep. 1234. The First National Bank Case, supra, in so far as it conflicts with this opinion, is overruled.

We are not prepared to say upon the record before

us what balance was due Emig on March 20, 1903, computed upon the basis herein indicated. Upon a return of the case, evidence may be taken by both parties, and the court will ascertain and adjudge the full amount that Emig was entitled to on March 20, 1903, and after deducting therefrom the amount of his debt and interest, will compute the period for which the balance due would purchase entended insurance, and if the extended insurance carried the policy beyond the time of Emig's death judgment will be rendered in favor of appellee for the amount of the policy and interest from the time it was due; otherwise the judgment will be for appellant.

Wherefore the judgment is reversed, with directions for a new trial consistent with this opinion.