CASE 72.—ACTION BY CHARLES J. BOZEMAN'S ADMINIS-
TRATOR AGAINST THE PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA, ON A POLICY OF
INSURANCE ON THE LIFE OF THE DECEASED.—
November 20.

# Bozeman s Admr. v. Prudential Ins. Co, of America

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for defendant.   Plaintiff appeals.—Re-
versed. .

1.  Insurance — Life Policy — Extended Insurance.—A life policy
    gave insured the privilege of borrowing from it, according
    to tables following, on the security of the policy; then pro-
    vided that if the policy, after being in force three years,
    lapsed or was forfeited for nonpayment of a premium or a
    note given for a premium or loan, it might be surrendered
    for a paid-up life policy as specified in the following table,
    and that, if the policy so lapsing or forfeited was not sur-
    rendered for a paid-up life policy, the company would write
    in lieu of it, and, without any action by insured, a paid-up
    term policy "for the full amount insured by this policy,"
    and to continue in force for the term indicated by the follow-
    ing table of extended insurance, the paid-up term policy, how-
    ever, to provide that, in case of death of insured within three
    years from such lapse or forfeiture, there shall be deducted
    from the amount payable by the company all premiums that
    would have become due on the policy up to insured's death
    and the policy been continued in force, and any indebtedness
    due the company on the policy at the date of such lapse or
    forfeiture; then made provisions for surrender of the policy
    for cash, according to the following table, at the end of
    five years, or at certain other times, and then, under the
    head of "Tables Above Referred To," provided that any in-

Bozeman's Admr. v. Prudential Ins. Co. of America.

debtedness placed on the policy would operate to reduce the benefits. Held, that the amount, otherwise available for purchasing extended insurance, and so fixing the period of such extended insurance, was not to be diminished by any indebtedness of insured to the company; the policy under the head of such insurance otherwise providing the manner of payment of the indebtedness.

2. Insurance — Life Policy — Loans to Insured. — Where a life policy provides the terms on which insured may borrow of the company, a more onerous condition in the contract, under which he did borrow of it is void; there having been no further consideration for it.

3. Insurance—Life Policy—Loans to Insured—Forfeiture for Non-Payment.—Even if valid, in view of provisions of the policy, the provision in a contract of loan by a life insurance company to a policy holder that if the loan, with accumulated interest, shall equal the legal reserve for the policy, the company may demand immediate payment, and, if payment is not made, may cancel the policy, is available only where there is no balance of reserve above the loan and interest.

HENDRICK, MILLER & MARBLE for appellant.

POINTS AND AUTHORITIES.

1. A brother has an insurable interest in a brother.

2. The Insurance Company had no right to forfeit the policy for the nonpayment of the loan or interest on the loan. (N. Y. Life Ins. Co. v. Curry, 115 Ky., 100; same case 24 Ky. Law Rep., 1932, and 61 L. R. A., 268.)

3. The term of extended insurance was not reduced by the indebtedness placed against the policy.

4. But if it was so reduced it was not so reduced in the ratio that the loan bears to the legal reserve.

5. Four full premiums having been paid, the policy was carried by them to and beyond the death of the insured, notwithstanding the loan of the insured.

CRICE & ROSS for appellee.

The material question which is presented for determination in this case is as follows:

Where the insured, under the terms of a life insurance policy, has borrowed from the company and executed to it a loan certificate whereby he assigns the policy and benefits to it as

collateral, and afterwards defaults in the payment of the annual premium and fails to pay the loan or the legal interest upon same, has the company a right under the terms of the policy in this case to deduct the amount of the loan and simple interest upon same at 5 per cent. per annum from the reserve value of the policy at the time of the nonpayment of the premium and give to 'the insured extended insurance for such period of time as the balance of the reserve would carry it at the same ratio that the loan and the balance of the net reserve bears to the period of time that the full reserve if there was no loan would carry it, or has the insured, under the terms of the policy in this case, a right to retain the loan and claim extended insurance in the same way and for the same period of time as if no loan had been made against the policy. In other words has the insured, under the terms of this policy, a right to receive and retain both the loan value of a policy and extended insurance for the full period of time as if no loan had been made, or no encumbrance eisting against the policy?

### CITATIONS AND AUTHORITIES.

Mutual Benefit Life Insurance Co. v. First National Bank of Louisville, 25 Ky. Law Rep., 172; Emig's Adm'r v. Mutual Benefit Insurance Co., 32 Ky. Law Rep., 484; Jagoe v. Aetna Life Insurance Co., 29 Ky. Law Rep., 984.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

On the 22d day of July, 1899, appellee issued and delivered to James Edgar Bozeman an ordinary life policy for the sum of $1,000, payable, first, to Bozeman Bros., and afterwards changed, about which there is no dispute, and made payable to his brother, Charles J. Bozeman. He paid two premiums of $35.26 each in cash, but failed to pay the third premium when due, and the policy lapsed July 22, 1901. Appellee insisted that he pay the premium and be reinstated, and finally wrote him that it would loan him the money to pay it and take an assignment of the policy as security. In the month of April, 1902, he borrowed $32 from appellee, and assigned the pol-

icy to secure the loan and paid $1.60 interest in advance on the loan, and the difference between the amount borrowed and the premium he paid in cash and was given a receipt for the amount of the premium, $35.26. When the next premium fell due, July 22, 1902, he paid it in cash, and also paid the interest for one year in advance, to-wit, $1.60, on the loan note. He failed to pay the next premium, which fell due July 22, 1903. Bozeman lived until the 1st of December, 1905; and his brother, the beneficiary, died about three weeks afterwards. Appellant was appointed and qualified as the administrator of Charles J. Bozeman, and instituted this action to recover the amount of the face of the policy. The issues were formed by the pleadings, and the case, by agreement, was transferred to the equity docket. The court heard the case and dismissed appellant's action, from which ruling he appeals.

Indorsed on the back of the policy in print are certain privileges, conditions, and tables. Appellant contends that these extend the policy, for the full amount thereof, until more than one year after the date of the death of the insured. Appellee's contention is that the policy, for its face value, was not extended by the privileges, conditions, and tables indorsed thereon until the date of the insured's death; but that the policy ceased some time in the month of June, 1905. We copy the indorsements on the policy that have application to the issues presented. They are as follows:

"Privileges.

"Cash Loans.

"If this policy is continued in force, the insured may borrow from the company the amount specified in the following table, by making written application

for the loan and assigning the policy to the company as security in accordance with the terms of the company's loan certificate; provided five per cent interest on the whole amount of the loan is paid annually in advance

"If this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, it may be surrendered for a non-participating paid-up life policy as specified in the following table; provided the policy is legally surrendered to the company within three months after such lapse or forfeiture. If this policy, having lapsed or become forfeited as above, is not surrendered for a paid-up life policy, the company will write in lieu of this policy, and without any action on the part of the insured, a non-participating paid-up term policy for the full amount insured by this policy, and to continue in force for the term indicated by the following table of extended insurance. The paid-up term policy shall provide, however, that in case of the death of the insured within three years from the date of such lapse or forfeiture there shall be deducted from the amount payable by the company the sum of all the premiums that would have become due on this policy up to the time of the death of the insured if the policy had been continued in force, and any indebtedness due the company on this policy at the date of such lapse or forfeiture. The paid-up term policy will be delivered on the legal surrender of this policy.

"Or Cash Surrender Values.

"If this policy is legally surrendered to the company within three months from the end of five years

from its date or of any five-year period thereafter, and all premiums to the end of that period have been paid in full, the company will pay therefor the sum indicated by the following table of cash surrender values. Or, if this policy is legally surrendered to the company within three months from the end of twenty years from its date or of any five-year period thereafter, and all premiums to the end of that period have been paid in full, the cash value of the policy may be applied to purchase an annuity payable during the life of the insured.

"Tables Above Referred To.

"The benefits stated in the following tables apply to the original sum insured only. Any indebtedness placed on the policy will operate to reduce the benefits."

The tables referred to in the above quotations are on the back of the policy, and show that, when three premiums have been paid, the insured is entitled to borrow $37, and when four have been paid he has the right to borrow $49, and is entitled to a non-participating paid-up life policy, when three premiums have been paid, of $105, and, when four have been paid, of $138, and, when three premiums have been paid, he is entitled to extended insurance for the face of the policy for 2 years, 326 days, and, when four premiums have been paid, for 3 years, 271 days; and is entitled to named amounts at the end of five-year periods.

Appellee's contention is that, when four premiums were paid, he was not entitled to have the policy extended 3 years and 271 days, because when the policy lapsed for the non-payment of the premium of July 22, 1903, he owed appellee the $32 note; that it should have been deducted from the legal reserve due the

insured, and the balance of the reserve would have
only extended the insurance to June, 1905, four or five
months before the death of the insured, and cites the
cases of Mutual Benefit Life Insurance Co. v. First
National Bank of Louisville, 115 Ky. 757, 74 S. W.
1066, 25 Ky. Law Rep. 172; Emig's Admr. v. Mutual
Benefit Insurance Co., 127 Ky. 588, 106 S. W. 230, 32
Ky. Law Rep. 484, and Jagoe v. Aetna Iife Insurance
Co., 123 Ky. 510, 96 S. W. 598, 24 Ky. Law Rep. 984,
as sustaining its contention. This position would be
correct if we were construing a policy containing pro-
visions like unto those in the cases referred to. The
policies before the court in the Emig and Bank cases
were issued by the same company, and provided
that "when after two full annual premiums shall have
been paid on this policy it shall cease or become void
solely by the non-payment of any premium when due,
its entire net reserve by the American Experience
Mortality and interest at 4 per cent yearly (provided
there be no loan on the policy) shall be applied by the
company as a single premium at the company's rates
published and in force at this date." And then con-
tinues, giving the different options that the insured
may avail himself of. Another paragraph of the pol-
icy is as follows: "If there be any loan on the policy,
such indebtedness shall be paid off out of the cash
value and the remainder paid in cash by the company,
or a value will be allowed by the company in the form
of extended or paid-up insurance, as above provided,
the amount to be applied to the purchase of such insur-
ance being correspondingly reduced in the ratio of the
indebtedness to the full cash surrender value." Thus
it will be seen that the policies under consideration in
those cases expressly provided that the loan to the
insured should be deducted from the legal reserve, and

the remainder was to purchase extended insurance. That is to say, it expressly provided that any indebtedness by the insured to it should first be deducted from any option proffered by the policy chosen by him. The policy in the case of Jagoe v. Aetna Life Insurance Co., supra, in terms is substantially like those of the Mutual Benefit Ins. Co.; but it further provides, as construed by this court, that, if the insured was indebted to the company when the policy lapsed for non-payment of premiums, no extended insurance was allowed. So it will be seen that the construction placed on the policies in those cases have but little application to the policy in the case at bar The terms are different.

The policy in the case at bar provides expressly that if the policy should lapse or become forfeited by reason of the non-payment of any premium or loan, and the policy is not surrendered for a paid-up policy, the company will write, in lieu of it, and without any action on the part of the insured, a non-participating paid-up term policy "for the full amount insured by this policy," and it shall continue in force for the term of 3 years, 271 days. This paid-up term policy shall provide, however, that, in case of death of the insured within three years from the date of such lapse or forfeiture, there shall be deducted from the amount payable by the company the sum of all the premiums that would have become due on the policy up to the time of the death of the insured if the policy had been continued in force, and there should, also, be deducted from the face of the policy any indebtedness due the company on the policy at the date of such lapse or forfeiture. Thus we see that the contract the insured had with appellee provided how the indebtedness of the insured should be settled in case of extended insur-

ance; that is, it should be deducted from the face of the policy, and not as in the cases referred to deducting it from the legal reserve. There is not an intimation in the ontract before us that authorized the company to first deduct the indebtedness of the insured to the company from the legal reserve, and apply the remainder to purchase extended insurance, as in the cases referred to; but by express terms this policy provides that such indebtedness should be deducted from the amount named in the policy, to-wit, $1,000. If appellee's contention be sustained, and the loan be deducted from the legal reserve and the balance used to carry extended insurance, and then also deduct it from the face of the policy, if the insured dies within three years from the lapse, the result would be to make him pay the loan twice, and contrary to the terms of the policy. Appellee contends that the following words: "Any indebtedness placed on the policy will operate to reduce the benefits"—which are found under the expression "Tables referred to," authorized the deduction of the indebtedness from the legal reserve of the policy, and the balance only could be used to purchase extended insurance. The last quoted words are in harmony with the words quoted above with reference to extended insurance. The indebtedness of the insured does operate to reduce the amount that would be received otherwise. It is not reasonable to suppose that those words were used with the intention of changing the provision with reference to what should be the disposition of the indebtedness of the insured to the company in the case of extended insurance; for that had already been especially provided for. The only reasonable inference and construction that we can place upon the words last quoted, to-wit, "any indebtedness placed on the policy will

operate to reduce the benefits,'' is that the policy in the case at bar provides that the full amount of cash that will be loane˙ on the policy, when four premiums have been paid, is $49, and, when a like number of premiums have been paid, a paid-up non-participating life policy for $138 would be issued; and the tables referred to in the clause under title, ''Cash Surrender Values,'' fixed the amount that the insured would be entitled to receive at the periods named, and the language used was for the purpose of requiring that the amount of the indebtedness of the insured should be deducted, in case of a loan, from the $49, and, in case of the paid-up life policy, the indebtedness should be deducted from the $138, and the policy issued for the balance. In addition to the above, it will be seen from the provisions of the policy that there were four methods by which to settle the policy in the lifetime of the insured: First, cash loan privileges; second, by the issuing of a non-participating paid-up life policy; third, extended insurance; fourth, by the insured receiving certain stated sums at the end of five-year periods—in none of which were there any provisions stating how the indebtedness of the insured to the company should be settled, except the one with reference to extended insurance. Hence the necessity for the clause with reference to the indebtedness operating to reduce the benefits that it might apply to those options not provided for; and to accentuate the fact, as had already been provided, it provided that the indebtedness of the insured should be deducted from the face of the policy. There is no other construction that can be placed upon this language without making the last quoted words conflict with the previous language of the policy dealing, especially, with the matter of extended insurance, and as to what disposition

should be made of the indebtedness of the insured to the company. This court has frequently said, in construing such contracts as this one, that the insurance companies prepare their policies, which are printed mostly in small type, and, if there are any ambiguities or seeming inconsistencies, that construction of the contract which is most favorable to the insured should prevail. The reasonable presumption is that, when Bozeman read and accepted the policy, he understood from the provision with reference to extended insurance that it meant that, if he did not elect to take one or the other of the options provided for in the contract, the company was bound, without any action on his part, to provide for him, after he had paid four premiums, a policy of extended insurance for the face value of the policy for 3 years, 271 days; and that his beneficiary would receive the full face value of the policy, except the premiums that he would have paid from the date of the lapse of his policy to his death, and any indebtedness that he owed the company; and that the deduction of benefits referred to in the first clause had reference to the matters above stated.

To construe this policy as contended for by appellee, we would have to interpolate words and phrases, and the words used would have to be given a meaning that was not intended, or, at least, that the insured never thought of when he entered into the contract. Appellee claims that, when the insured borrowed the $32 from it, he executed an obligation by which he agreed that it might declare the policy forfeited and void upon his failure to perform certain conditions therein named, and he failed to perform the conditions, and appellee declared the policy at an end, and it ceased to be binding upon it. The obligation referred to is as follows: "This is to certify that I, the

undersigned, James E. Bozeman, the insured on whose life ordinary policy No. 161006 was issued by the Prudential Insurance Company of America, have this day borrowed from the said Company the sum of thirty-two —— 00-100 dollars and hereby assign, transfer and set over unto the said company, its successors and assigns, the said policy and all profits and benefits now due or which may hereafter become due thereon as herein provided. It is understood and agreed: First. That the said sum borrowed as aforesaid shall bear interest at the rate of five per cent per annum, payable in advance, and that said interest unless duly paid shall be added to the above loan and bear interest at the same rate and on the same conditions. Second, That any dividend declared on said policy may be applied by the company toward the payment of said loan and any unpaid interest, anything to the contrary in the policy notwithstanding. Third. That if said policy shall become forfeited in any manner, the amount of said loan, with interest accumulated and accrued thereon, shall be deducted from the cash value of any allowance guaranteed by the terms of said policy in case of such forfeiture. Fourth. That if said policy shall mature before said loan, with the interest accumulated and accrued thereon, shall have been fully paid, the total amount thus due the company shall be deducted from the amount otherwise payable by the company. Fifth. That if the said loan with the accumulated interest shall become equal to the legal reserve for the said policy, the company may demand immediate payment of said loan—or any part thereof—with all interest accumulated and accrued thereon, and if the same be not paid to the company within thirty days after due notice by mail or otherwise, the said policy shall be and become entirely for-

feited and void." It will be seen that clauses numbers
1, 2, 3, and 4 in the loan obligation conform to the
provisions of the policy; but the fifth enters upon a
new field, and prescribes conditions not mentioned in
the policy.   The insured had paid for the right to
borrow $49 upon the conditions named in the policy,
which do not include the conditions or provisions men-
tioned in the fifth article of the loan contract.   Appel-
lee in its answer relies on the cancellation of the pol-
icy under the conditions stated in the fifth clause of
the loan contract.   It is our opinion that the additional
and more onerous provisions incorporated in that
clause are not binding, because, as stated, the insured
had purchased the right to borrow $49 upon the con-
ditions stated in the policy.   It is not pretended that
appellee paid the insured any consideration for the
right to forfeit his policy on any other conditions than
those named therein.

The cases of New York Life Ins. Co. v. N. L. Curry,
115 Ky. 100, 24 Ky. Law Rep. 1930, 72 S. W. 736, 61
L. R. A. 268, 103 Am. St. Rep. 297, and Emig's Admr.
v. Mutual Benefit Ins. Co., supra, sustain this position,
and the last case cited overrules the case of Mutual
Benefit Life Ins. Co. v. First National Bank of Louis-
ville, supra, to the extent that it opposes this prin-
ciple.   If, however, we are in error as to this, appellee
had no right, under the fifth clause of the loan agree-
ment, to declare, when it did, on June 29, 1905, that
the insurance of Bozeman was at an .end.   The lan-
guage of that article is to the effect that if the loan,
which was $32, with the accumulated interest, should
become equal to the legal reserve for the policy, then,
in that event, the company might demand the imme-
diate payment of the loan and the accumulated inter-
est, and, if not paid, it reserved the right to cancel

the policy. Appellee's actuary, the only witness who testified on the subject, stated that the amount of the reserve which had accumulated on the policy of the insured was $82.30. The interest which had accumulated on the loan to the time when appellee canceled the policy in July, 1905, could not have been more than two years, as it is agreed that he had paid the interest to July 22, 1903, and this added to the loan of $32 makes $35.35, which did not equal the legal reserve for the policy. The reserve, as stated without contradiction, was $82.30. But appellee wants the words "the balance" inserted in the fifth clause of the loan agreement, so that it will read: "If said loan with the accumulated interest shall become equal to the balance of the legal reserve for the policy," etc. Even if this was allowable, the loan with its interest would not equal the balance of the reserve, for such balance at the time they canceled the policy amounted to $46.95, nor would it have equaled the balance of the reserve at the time of the insured's death, nor at this time. It is contended that this construction of the policy operates as a hardship upon appellee; that the policies under consideration in the cases cited by appellee were otherwise construed. In answer to this it is enough to say that the provisions of the policies referred to are different from the provisions of the one now under consideration. The terms of the policies in the cases referred to seemingly made it a hardship upon the insured; but the court determined that they made the contracts and were bound thereby, notwithstanding it seemed to be a hardship upon them. We have construed the policy in the case at bar in accordance with the provisions contained in it. To construe it as contended for by appellee, the wording would have to be changed. Doubtless appellee obtained

insurance by showing and explaining to persons the advantages contained in its policy over the policies of other companies, and it must abide by the terms therein. It took the chance of the insured living beyond the 3 years, 271 days. If he had, it would have retained all that he had paid, to-wit, $112.24, and the right to collect the loan of $32 with its interest from the insured. It is true that after that its collateral would have been worthless, but it would have had the right to collect its debt if he was solvent or ever became so.

For these reasons, the judgment of the lower court is reversed with directions for the court to deduct from the face value of the policy the sum of the premiums that would have become due on the policy up to the time of the death of the insured, and the amount of the loan obligation of $32 with its interest due at the date of the death of the insured, and render judgment in favor of appellant for the balance, with interest from the date when the policy was due and payable.