MISSOURI STATE LIFE INSURANCE COMPANY v. CRABTREE.

Opinion delivered June 5, 1916.

LIFE INSURANCE—DEFAULT IN PAYMENT OF PREMIUM—NOTE—ELECTION BY COMPANY—NOTICE TO ASSURED.—Under a policy of life insurance, after the payment of two years premiums, certain provisions were made, where the insured became in default in the payment of an annual premium. *Held*, under the terms of the policy, that when the insured executed a note to cover a premium then due, that upon the non-payment of the premium note, that the company was put to an election whether it would apply the unpaid amount of the earned premium to the cash surrender value, and thus reduce the term of the extended insurance, or hold the amount as indebtedness against the insured, and that in order to exercise the option to reduce the extended insurance, notice to the insured was essential.

Appeal from Greene Circuit Court, First Division; *W. J. Driver*, Judge; affirmed.

*Jones, Hoeker, Sullivan & Angert* and *Block & Kirsch*, for appellant.

1. The policy and note embody the contract of the parties. 96 U. S. 234; 187 *Id.* 335; 104 Ark. 294; 75 *Id.* 814; 160 Fed. 646.

2. On August 9, 1914, 102 days after the third premium became due, and default in payment of the note, all rights of the insured and beneficiary ceased and determined without notice. 74 Ark. 507; 85 *Id.* 337; 160 Fed. 646; 104 Ark. 288; 81 *Id.* 145; 79 *Id.* 38; 75 *Id.* 25; 74 *Id.* 507; 65 *Id.* 240. The policy was forfeited and there was no estoppel or waiver by the company. 93 U. S. 24; 104 Ark. 297. 74 S. W. 663 is not an authority for appellee. The law should have been declared as contended for by appellant.

*M. P. Huddleston, Robert E. Fuhr* and *J. M. Futrell,* for appellee.

1. Upon the nonpayment of the premium note the company was put to an election whether it would apply the unpaid amount of the earned premium to the cash surrender value, or hold the amount as indebtedness against the insured and notice was necessary. 72 N. E. 358; 23 Minn. 491; 74 S. W. 663; 9 Cyc. 647; Bishop on Contracts, § 783. The policy remained in force until affirmative action was taken by the company. 3 Cooley Briefs on Insurance, 2278; 80 Ark. 563.

McCULLOCH, C. J.   This is an action on a life insurance policy issued by appellant; the defense asserted is that there was a forfeiture of the policy on account of nonpayment of the third annual premium. The policy, which was on the ordinary life plan, was issued on April 29, 1912, to J. S. Crabtree, and the sum named was made payable to appellee, Mary M. Crabtree, the wife of J. S. Crabtree, in the event of the death of the latter and due proof thereof being made to the home office. The annual premium was the sum of $34.13, payable on the 29th day of April of each year during the life of the assured. The facts of the case are undisputed, and the question presented on this appeal is whether or not the

trial court, before whom, sitting as a jury, the case was tried, erred in rendering judgment against appellant.

The policy contained the following clause with respect to payment of premium and the options allowed on nonpayment thereof.

"After completion of premium payments for the first two policy years if any subsequent premium is not paid on the date when due, and remains unpaid during the month of grace, the insured shall, during said month, have the following options:

"1.   To surrender this policy at the home office of the company for its cash value; or,

"2.   To surrender this policy at the home office of the company for a paid-up life policy; or,

"3.   To let the insurance for the face amount hereof continue as term insurance.

"If the insured shall not within the month of grace surrender this policy at the home office of the company for its cash value as provided in Option 1, or for a paid-up life policy as provided in Option 2, the insurance will be automatically continued as provided in Option 3."

There is a further stipulation in the policy that the term of continued insurance mentioned in the third sub-division quoted above "will be such as the cash value of this policy less any indebtedness hereon to the company, will purchase at the company's single life and term rates, respectively, for the attained age of the assured, counting each completed quarter of policy year in arriving at such age."

The first two premiums were paid when they fell due, and it is agreed that the length of the term of the continued insurance was one year and seven months from the date of the expiration of the time for the payment of the third premium—that is to say, that length of time from the expiration of the thirty day grace period running from April 29, 1914. The insured gave the company a promissory note for the amount of the third premium due and payable six months from April 19, 1914,

the day that premium was due, which said note contained the following stipulation:

"That if this note is not paid on or before the day it becomes due, said policy shall be deemed to have ceased and determined on the date when said premium was due and all rights to extended or paid-up insurance shall be for the term and amount secured by said policy on and from the day when said premium became due; but, nevertheless, the maker of this note shall be personally liable to the company for a sum equal to one-half of the principal, of this note, said sum to be due and immediately collectible as compensation for the rights and privileges hereby granted and as the earned premium for the insurance granted from maturity of this note (or at the pleasure of the company said sum, with interest at 6 per cent., may be treated as an indebtedness on account of the policy to reduce any of its nonforfeiture values or benefits in accordance with the terms of the policy); and the payment to or collection by said company of said sum shall not revive said policy or any of its provisions."

That note was not paid and appellant charged the sum equal to one-half of the principal of the note against the assured in reduction of the amount of the nonforfeiture value, which left of the original cash value of the policy on the last premium date a sufficient balance to purchase extended insurance for 102 days. No notice, however, was given to the insured of the company's election to so apply the so-called earned premiums evidenced by the note. The assured, J. S. Crabtree, died on April 15, 1915, which was within the original term of extended insurance.

The contention of appellant, therefore, is that under the contract specified in the note it had the right to charge the earned premium against the cash surrender value, and thus reduce the amount which went under the policy towards the purchase of extended insurance, and that inasmuch as the sum left was only sufficient to purchase extended insurance for the period of 102 days,

the policy was automatically terminated on the due date of the note without any further action on the part of the company. On the other hand, the appellee contends, and the court so held, among other things favorable to appellee, that upon the nonpayment of the premium note the company was put to an election whether it would apply the unpaid amount of the earned premium to the cash surrender value, and thus reduce the term of the extended insurance, or hold the amount as indebtedness against the insured, and that in order to exercise the option to reduce the extended insurance, notice to the assured was essential.

We are of the opinion that the court was correct in holding that appellant's option could not be exercised by applying the sum of the unearned premiums in reduction of the terms of the extended insurance, without notice to the insured. It will be observed from consideration of the express terms of the note that the amount of the earned premiums was to be a personal liability of the maker of the note to the company, unless the company elected to treat it "as indebtedness on account of the policy to reduce any of its non-forfeiture values or benefits," and in order to exercise that option it was necessary to furnish some evidence thereof by notice to the other party to the contract. The note itself was the evidence of the liability, and the company by retaining this evidence, without any notice to the maker of the note, elected to treat the amount as a continuing personal liability of the maker. If the assured had outlived the original term of extended insurance, the company, by retaining the note and failing to make an election to the contrary, might have sued him for the amount of this personal liability, and there is no reason why a recovery could not have been had upon that liability. Of course, the company had no right to speculate on the result by retaining the evidence of liability and at the same time treating the liability as extinguished by application of the sum in reduction of the amount of extended insurance.

This is not a question of the necessity of declaring a forfeiture which under the terms of the contract results automatically, but it is a question of exercising an option, and in that case it is necessary to give some notice of what the intention of the party is with respect to the election. The principle has been settled by this court in several cases. *Lenon* v. *Mutual Life Ins. Co.,* 80 Ark. 563; *Patterson* v. *Equitable Life Assurance Society,* 112 Ark. 171.

Appellant relies upon the case of *Citizens' National Life Ins. Co.* v. *Morris,* 104 Ark. 288, but we think the principles announced in that case have no application to the present one.

There is another question in the case, whether or not the company had a right to stipulate in the note a restriction upon the term of the extended insurance, there being nothing in the policy which authorized it. The policy is payable to appellee, but there is a stipulation that the insured could change the beneficiary at any time. Whatever vested interest the beneficiary had in the policy, was beyond the power of the company to restrict by an additional contract not authorized by the terms of the policy itself. However, we pretermit any further discussion of that question for the reason that the point already decided is conclusive of the case and calls for an affirmance of the judgment.

It is ordered, therefore, that the judgment be affirmed.