NEAL *v.* COLUMBIAN MUTUAL LIFE ASSURANCE SOCIETY.

(Division A.   Dec. 14, 1931.)

[138 So. 353.   No. 29582.]

J. J. Breland, of Sumner, for appellant.

**J. Morgan Stevens,** of Jackson, for appellee.

Where insured, who had paid more than three years premiums on a life policy, procured a loan to the full value of the policy and then defaulted in the payment of the interest premiums and principal, the insurance was not extended under a nonforfeiture clause providing that after three full years premiums should have been paid, the policy should be automatically extended on nonpayment, provided it should be free from debt, since in such case the policy was not free from debt.

Fidelity Mutual Ins. Co. v. Oliver, 111 Miss. 133, 71 So. 302.

Whatever debt was due by the insured for money borrowed on the policy should have been deducted from the reserve or cash surrender value of the policy at the time when default was made in the payment of the premium, and the balance applied to the extended insurance. The construction contended for would give free insurance to the insured for a lengthy period plainly not intended.

New York Life Ins. Co. v. Blalock, 144 Miss. 541, 110 So. 432; Pilot Life Insurance Company v. Owen, 31 Fed. (2d) 862; Black v. Franklin Life Insurance Company, 133 Georgia 859; Federal Life Insurance Company v. Kemp, 257 Fed. 265; Pacific Mutual Life Insurance Co. v. Davin, 5 Fed. (2d) 481; Emigs, Administrator, v. Mutual Benefit Life Ins. Co., 23 L. R. A. (N. S.) 828.

We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount could exist, and an indebtedness be outstanding at the same time. When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insurance during the extended term and therefore the extended term insurance fails to take effect. This is necessarily sound insurance business.

Mills v. National Life Ins. Co., 136 Tenn. 350.

Section 5171, Mississippi Code of 1930 prohibits any distinction or discrimination as between individuals of the same class having an equal expectation of life "in the amount of payments on premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereunder or in any of the terms or conditions of the contracts it makes." This statute does not forbid the insured from borrowing money upon his policy or the assignment of his policy as security. No plea was interposed that would show any discrimination of any kind and if there is any violation of the statute it would be in permitting the insured to borrow on his policy and the point would have to be raised by one who has been injured and not by one who has been benefited.

No more than six per cent interest was charged.

Pacific Mutual Life Insurance Company v. Davin, 5 Fed. (2d) 481.

**Cook, J.,** delivered the opinion of the court.

Mrs. Cornelius Gertrude Neal, plaintiff in the court below, filed her declaration in the circuit court of the Second judicial district of Tallahatchie county against the Columbian Mutual Life Assurance Society, defendant, on an insurance contract in the sum of two thousand dollars on the life of Bascom L. Neal, and in which the plaintiff was beneficiary. To this declaration the defendant assurance society filed a plea of the general issue and a special plea admitting a liability to the plaintiff of seven hundred eighty dollars and nine cents, and tendered said sum to her. It also filed a special plea in bar of her right to recover any sum in excess of the sum tendered, alleging, in substance, that during the lifetime of the assured he allowed the contract of insurance

sued on to lapse for a failure to pay the required installments or premiums due thereon; that, prior to the date of said lapse, the assured borrowed on said contract, so that at the time of the said lapse there was an indebtedness against said covenant of insurance of one hundred thirty dollars and fifty-three cents; that the insured did not have his contract of insurance reinstated in the manner therein provided; that there was no apportionment of surplus to the covenant sued on at any time prior to the death of the assured; and that the entire gross cash value of said covenant would have amounted to two hundred fourteen dollars at such date of lapse, if there had been no indebtedness attached to the covenant, but after deducting the aforesaid indebtedness from the full cash surrender value, the net cash value of the covenant at the date of the lapse was only eighty-three dollars and forty-seven cents. This plea further set up that the covenant of insurance provided that, if it should lapse after the premiums had been paid thereon for the full period of three years or longer, and the assured did not elect to surrender the covenant within three months after lapse for a paid-up covenant, then, without action on his part, the covenant would be continued as term insurance from the due date of the premium for the term specified in the table referred to, and a part of the covenant; that the covenant of insurance expressly provided that, if there was an indebtedness against it, the amount at risk as continued term insurance would be proportionately reduced, the clause of the policy so providing being set forth and expressly pleaded.

The plea further averred that the exact amount of continued term insurance for which it was liable was that proportion of two thousand dollars, the face of the said covenant, which the net cash value of eighty-three dollars and forty-seven cents would purchase according to the table set out in the contract of insurance; that the

gross cash value of two hundred fourteen dollars would provide insurance in the amount of two thousand dollars for the specified term set out in the table, which is a part of the covenant, to-wit, ten years, three months, and twenty days; and that the net cash value of eighty-three dollars and forty-seven cents would purchase extended insurance in the sum of seven hundred eighty dollars and nine cents for the said term of ten years, three months, and twenty days, specified in said table; and that accordingly, under the express terms and conditions of the covenant, the actual sum of extended term insurance on the date of the lapse of the covenant was the said sum of seven hundred eighty dollars and nine cents, which was therewith tendered. To this special plea the plaintiff interposed a demurrer, which was overruled, and, the plaintiff declining to plead further, a final judgment for the defendant was entered; and from this judgment the plaintiff appealed.

The contract of insurance, in paragraph three thereof, provides that:

"After all required payments have been made on this covenant for the full period of three years (thirty-six months) the same shall not become forfeited for non-payment of further premiums, but in such case the covenant shall be treated as lapsed only, and the Assured shall be entitled to one of the settlements specified in the following table, which are:

"First—On application and legal surrender of this covenant within three months, a paid-up covenant for the amount specified.

"Second—Without action on the part of the Assured this covenant continued as term insurance for the specified term from due date of premium."

Just preceding the table of cash surrender, loan, paid-up, and continued term insurance values in paragraph three, there is the following provision: "Benefits stated

in the following table apply to the original sum insured only. Any indebtedness to the Society placed on the covenant will operate to reduce the benefit, and unless otherwise provided for, will also proportionately reduce the sum of paid-up insurance and the amount at risk under continued insurance.''

The policy loan agreement, which was executed by both the assured and the beneficiary, shows, and it is admitted, that the assured borrowed on the security of the policy the sum of one hundred thirty-three dollars and thirty-three cents, upon which he agreed to pay the company interest annually in advance at the rate of six per cent per annum, but with the express provision that, in event it was repaid, interest would be charged only to the date of repayment, and any excess interest would be refunded.

Section 2 (a) of the loan agreement provided that the sum so advanced should become due and payable "If there is default in the payment of any premium on said policy, in which event the sum so due and payable, with interest, shall, without demand or notice of any kind, every demand and notice being hereby waived, be deducted in the manner provided in said policy, and thereupon indebtedness shall be deemed fully paid and satisfied.''

Section 2 (b) of this agreement provided that the sum so advanced should become due and payable "On the maturity of the policy as a death or disability claim, an old age endowment, or on the surrender of the policy for a cash value before default in the payment of premium. In any event the amount so due and payable shall be deducted from the sum to be paid or allowed under the policy.''

Paragraph 3 of the said loan agreement provided that, whenever the total indebtedness to the society on said policy should equal its cash surrender value, then in the

event of failure to pay interest thereon, and notice of that fact mailed to the assured and beneficiary, the policy should, one month after the mailing of said notice by the society, and without further notice or action of any kind, be void and of no effect, unless said defaulted interest was paid within said one month after mailing said notice,. and that, whenever the policy so becomes void and of no effect, all of said indebtedness to the society should be deemed fully paid and satisfied.

The demurrer to special plea No. 1 admits the allegations thereof, and the decision of the question of whether or not the demurrer was wrongfully overruled involves a consideration of the meaning and consideration of the terms and provisions of the insurance contract and loan agreement quoted above. It is the contention of the appellant that the meaning of the word "benefit" in the clause of the covenant providing that "any indebtedness to the Society placed on the covenant will operate to reduce the benefit" is ambiguous, and may be reasonably held to refer to the face of the policy rather than the cash surrender value thereof, and therefore it must be given the construction or meaning that would be most favorable to the assured by reducing the face of the policy in an amount equal to the indebtedness rather than deducting the indebtedness from the cash surrender value in determining the amount of extended insurance.

It does not appear to us that the provision of the covenant herein quoted, in reference to the reduction of the benefit and extended insurance by any indebtedness to the society placed on the covenant, is ambiguous. It appears that the appellant places too great emphasis on the phrase, "any indebtedness to the Society placed on the covenant will operate to reduce the benefit," without giving equal emphasis and consideration to the further provision of the same sentence that "any indebtedness to the Society placed on the covenant will also propor-

tionately reduce . . . the amount at risk under continued insurance.'' If the contention of the appellant that, after the lapse of the policy, continued insurance for the full original benefit, or face of the policy, is automatically in effect, to be reduced only by the amount of the indebtedness at the time of the settlement under the policy, is maintained, it will in effect write out of the contract the provision that any indebtedness placed on the covenant will proportionately reduce the amount of risk under continued insurance.

The provisions in reference to reduction of the benefit and the proportionate reduction of the amount at risk under continued insurance must be considered and construed together, each as completely and fully covering the subject to which it is applicable. The cash surrender value of the covenant upon the lapse thereof is the fund which purchases extended insurance, and this extended insurance automatically comes into force for the term specified in the table set forth in the covenant, upon the lapse of the covenant, unless the assured, in the manner therein provided, elects to take a paid-up covenant for the amount ' specified in the said table. The contract between the parties expressly provided that this extended insurance should be for the term specified in the said table, but would be proportionately reduced by any indebtedness to the society placed on the covenant. A mere subtraction of the indebtedness from the full benefit named in the face of the covenant would not be a proportionate reduction of the amount at risk; and it seems clear to us that this provision means that the amount of extended insurance that would be purchased by the full or gross cash value of the covenant at the date of the lapse thereof, would be reduced in proportion that the net cash value, after deducting the indebtedness from the gross cash value, bears to the gross cash value. The provision of the covenant for proportionately reducing

the amount of paid-up insurance and amount at risk under continued insurance became operative upon the lapse of the policy; and it appears that the provisions that "any indebtedness to the Society placed upon the covenant will operate to reduce the benefit" can only apply in the case of a settlement required to be made before there was any lapse of the covenant.

While we do not understand the appellant to so contend in this case, upon analogous provisions involved in a case in another jurisdiction, the contention has been made and denied that the reduction created by reason of existing indebtedness of the assured was in the time of the extended insurance, and not in the amount for which such insurance was continued. Pilot Life Ins. Co. v. Owen (C. C. A.), 31 F. (2d) 862. The provisions here involved are not subject to any such construction, as it is expressly provided that the extended insurance was to be for the specified term from the date of the premium.

In the case of Mills v. National Life Ins. Co., 136 Tenn. 350, 189 S. W. 691, 693, there was involved a provision that "any indebtedness to the company, unless otherwise provided in this policy, will be deducted from the cash value and will also proportionately reduce the sum of paid-up insurance and the amount at risk under continued insurance." It will be noted that, with the exception of the provision that "any indebtedness to the company . . . will be deducted from the cash value," this provision is in the exact language as the one here involved; and, in discussing this provision, the Tennessee supreme court said: "We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount could exist, and an indebtedness be outstanding at the same time. When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insur-

ance during the extended term, and therefore the extended term insurance fails to take effect. This is necessarily sound insurance business.''

The appellant next contends that, if the clause providing for a reduction of the benefit and a proportionate reduction of the amount at risk under continued insurance shall be construed as authorizing and requiring a deduction of the indebtedness from the full cash surrender value, and a consequent proportionate reduction in the amount of extended insurance, then the sum deducted from the face of the policy, together with six per cent interest charged on the loan, will amount to more than twenty per cent interest per annum on the indebtedness, and therefore will render the covenant of insurance usurious, unenforceable, and void, or, in other words, the contention is that thereby the appellee will be permitted to exact a sum by reason of the unpaid loan on the policy which amounts to more than twenty per cent on the amount borrowed.

Under no reasonable theory can the difference between the original amount of insurance named in the face of the covenant and the amount of continued insurance purchasable by the net cash value thereof be held to be interest on the loan. The reserve or cash value of the covenant is the only fund available for the purchase of extended insurance, and, when the assured withdrew a part of this fund by way of a loan, the amount of extended insurance which the remaining or net cash value would purchase was proportionately reduced, and the amount of this reduction was in no sense interest on the loan. By the terms of the loan agreement the society exacted six per cent per annum on the loan, and, in accordance with the terms and provisions of the covenant of insurance, the net cash value thereof was used merely to buy its ordinary value in extended term insurance in the manner prescribed in the covenant. The Pacific

Mutual Life Insurance Co. v. Davin (C. C. A.), 5 F. (2d) 481.

Finally, the appellant contends that, if the clause under consideration in the covenant of insurance be construed as we have held it must be, the clause is unenforceable and void, because it violates section 5171, Code 1930, in that the amount charged or deducted from the face of the covenant by reason of the indebtedness creates a discrimination in favor of nonborrowing policyholders as against borrowing policyholders of the same class and equal expectations of life.

Section 5171, Code 1930, provides that: ''No life insurance company doing business in Mississippi shall make any distinction or discrimination in favor of individuals of the same class and equal expectation of life in the amount of payments of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any of the terms and conditions of the contract it makes.''

There is no contention that there is any distinction or discrimination in favor of individuals of the same class and equal expectations of life in the amount of payments, premiums charged for policies of life or endowment insurance, or in the dividends, but the contention is that there is discrimination between the borrowing and nonborrowing covenant holders in the benefits payable, or in the terms and conditions of the contracts made. There is nothing in the record to show or indicate that there is any difference or discrimination in the form or terms and conditions of the insurance contracts issued to individuals of the same class and equal expectation of life. In the provisions of the covenant of insurance and loan agreement, there is no discrimination against borrowing covenant holders. The covenant holders who permit the accumulated reserve or cash value to remain intact are, upon the lapse of the covenant, entitled to extended in-

surance for the full amount of the face of the covenant; and the fact that those who withdraw all, or a part of, this cash value by way of a loan, which by contract between the parties becomes due and payable immediately upon the lapse of the covenant of insurance, are entitled only to the amount of extended insurance which the available net cash value will purchase, is not a discrimination against such policyholders. In each case the holder of the covenant receives exactly the benefit for which he pays.

We find no error in the action of the court below, and the judgment entered will therefore be affirmed.

Affirmed.