HOME LIFE INSURANCE COMPANY OF NEW YORK
v. STEPHENS.

4-3838

Opinion delivered May 20, 1935.

*Rose, Hemingway, Cantrell & Loughborough* and *Benjamin R. C. Low,* for appellant.

*Robt. H. Spelman* and *James S. McConnell,* for appellee.

SMITH, J. The appellant insurance company issued two policies of life insurance to Felix S. Stephens in exchange for two other convertible term insurance policies, the conversion being made on March 2, 1926, but the exchange was effective as of February 27, 1926, the date of the converted policies, which are identical except as to amount, one being for $3,000 and the other for $1,000. The insured died February 20, 1933, and separate suits were brought by the insured's widow, who was the named beneficiary, upon each of the policies. As the issues were identical, the cases were consolidated and tried as a single case. The plaintiff recovered judgment in each case, from which is this appeal.

The complaint in the suit on the three-thousand dollar policy alleged the death of the insured, and averred that on that date the policy was in full force and effect for the sum of $3,000, together with all dividend additions, less indebtedness in the sum of $190 with interest thereon at the rate of 6 per cent. per annum from the 27th day of February, 1930, to the 27th day of August, 1930. The complaint further alleged: "Plaintiff states that the premium of $38.70 due and payable August 27, 1930, was not paid, and that, under the terms of the said policy, if

the defendant'' (plaintiff) ''was in default at that time, the insured not having elected to avail himself of the benefits of option (a) nor option (c), for ninety days, said policy at its face value plus dividend additions, less the said indebtedness, should have been extended for four years and seven months. That, instead thereof, the defendant deducted said indebtedness from the face of the policy and extended said i n s u r a n c e for the sum of $2,816 for two years and four months and at the end of said time wrongfully declared said policy forfeited.''

The complaint in the suit on the thousand-dollar policy contained identical allegations except as to the amount of the policy, the loan thereon, and the amount of the quarterly premium.

Both policies have provisions for the payment of dividends, cash surrender values, loan values, and for extended insurance, to which further reference will be made.

The premiums on each policy were payable quarterly, and were $38.70 per quarter on the larger policy and $12.90 on the smaller. Each policy contained a table of loan and non-forfeiture values, showing at the end of each year after the second the loan and cash values, the paid-up participating life insurance to which the insured was entitled, and, third, the paid-up non-participating term insurance, which gave the length of time for which such term insurance would be extended. Each policy had a loan or cash value of $63.45 per thousand dollars for the amount of insurance therein named at the expiration of the third year, and the insured borrowed the amount thereof, to-wit, $190 on one policy and $63 on the other, the fractions of a dollar being ignored as the policies provided should be done. These loans were secured by assignments of the policies, and were evidenced by notes without due date, and were made, as they recited, on the sole security of the policies.

The premiums were due on the 27th day of May, August, November and February of each year, and were duly paid until May 27, 1930. The quarterly premiums due August 27, 1930, were not paid, and by reason of the

failure of the insured to pay the quarterly premiums which were then due both policies lapsed.

Both policies provide that, after two full years' premiums have been paid, the insured, within three months after the due date of any unpaid premium, but not later, might elect to take one of the three following options: (a) to surrender the policy for its cash value; (b) to have the insurance continued in force as term insurance from such due date without future participation in surplus and without right to loan values for an amount equal to the face amount of the policy and any outstanding paid-up additions, less any indebtedness to the company on such date; (c) to have the insurance continued for a reduced amount of participating paid-up life insurance payable at the same time and on the same conditions as the policy.

It was there further provided that: "If no election be made as above within the said three months, the insurance shall be continued as term insurance in accordance with option (b)."

The allegations of the complaint are to the effect that the policies having lapsed for nonpayment of premium, and no election having been made as to the option which the insured would take, the rights of the beneficiary are governed by the provisions of option (b) set out above.

That such is the effect of the policy was decided by this court in the cases of *Life & Casualty Ins. Co.* v. *Goodwin*, 189 Ark. 1073, 76 S. W. (2d) 93, and *New York Life Ins. Co.* v. *Moose, ante* p. 161.

The complaint having correctly alleged that the plaintiff beneficiary's rights are determinable by option (b), no other option having been taken, it is necessary only to determine what those rights are; in other words, for what period of time would the cash or loan value of the policies purchase extended insurance after the lapse of the policies through the admitted nonpayment of premiums on May 27, 1930, and August 27, 1930, or thereafter?

One of the most important questions presented on this appeal is whether the policy loans should have been

deducted from the cash or loan value in determining the sum of money available for the purchase of extended insurance, or should be charged against the face of the policy, thereby reducing the amount of extended insurance. The recent case of *Daugherty* v. *General American Life Ins. Co., ante* p. 245, is decisive of this question, it being there decided "that the loan is deductible from the cash loan value of the policy at the time of conversion, and the balance remaining, if any, of the cash surrender value shall be used in purchasing extended term insurance."

The language of option (b), above quoted, is too unambiguous to admit of any other construction, for it expressly provides, in determining the amount available to purchase extended insurance, that there shall be added to the cash or loan value any outstanding paid-up additions, less any indebtedness to the company. In other words, if the insured has borrowed the loan value, and appropriated it to his own use and another purpose, he cannot use this same value or amount of money to purchase extended insurance.

Now, if there had been no policy loan, there would be no uncertainty as to the term for which the extended insurance would run. The table above referred to gives the time, at the end of each year, after the payment of premiums beyond the expiration of the second year. But there was a policy loan which did not consume the entire value at the time option (b) became effective. The appellant's actuary testified how this calculation should be made, and was made, as required by the policy, and he was fully corroborated by the actuary of a local insurance company. The calculations are applicable alike to both policies. Testifying first in regard to the thousand-dollar policy, the witness stated that it provides for extended term insurance for four years and seven months at the end of the fourth year, and that the cash or loan value at the end of the fourth year was $92.56. This appears in the table of loan and nonforfeiture values above referred to. But this is true in the event only that the cash or loan value had not been reduced by a loan to the insured actually made. Such a loan having been

made, the witness was asked to calculate the cash value of the policy on August 27, 1930, the date option (b) became effective. At that time the policy had been in force four and one-half years. Its loan value at the end of four years was $92.56. Its loan value at the end of the fifth year was $121.82. The difference between these amounts is $29.26, but, as the policy had been in force only one-half of the fifth year, it was credited with only one-half of this difference of $29.26, or $14.63. This sum, added to $92.56, the loan value at the end of the fourth year, gave a loan value of $107.19 at the date when option (b) became effective. From this sum there was deducted the policy loan of $63, leaving $44.19, but to this there was added $1.83 unearned interest on the policy loan, making $46.02 available for the purchase of extended insurance. This amount was sufficient, according to the calculations of the witnesses, to purchase extended term insurance at single premium rate in the amount of $939, that is, the face amount of $1,000, less the net indebtedness of $61 (the difference between the loan of $63 and the unearned interest credit of $1.83), disregarding the fractions of a dollar as the policy provided should be done, for a period of two years and four months from the date option (b) was effective. The accuracy of these calculations is not questioned. Appellee questions only the basis upon which the calculations were made. The insured did not die within the two years and four months, but lived fifty-five days longer. The witness was asked what additional sum would have been required to keep the policies in force to the date of the insured's death, and he answered that $1.63 would have sufficed to carry the smaller policy, while $5.16 would have been necessary to carry the larger one beyond the date of the death of the insured.

Appellee insists that there was a divisible surplus in the company's earnings to which the policyholders were entitled, and which, had it been apportioned and credited, would have sufficed to carry the policies sued on beyond the date of the insured's death.

Appellee insists that "it is shown that $168,230 was or should have been in the divisible surplus account, some

part of which insured Stephens, as a mutual policyholder, was entitled to participate in," and it is argued that, had it been credited, the policies would have been kept in force to a date beyond that of the insured's death.

This contention cannot be sustained. Appellee developed the following facts in his cross-examination of appellant's actuary. The divisible surplus for the year 1926, when the policies were issued, was $1,915,000. There was an undistributed surplus for the years 1927, 1928 1929, and also a divisible surplus for each of these years. The undistributed surplus for each of these years is added together by counsel for appellee to ascertain the total amount of undistributed surplus. But this calculation is erroneous, because it was shown that any surplus not distributed at the end of a particular year went back into the general surplus account and became a part of the surplus of the ensuing year, and the amount of undistributed surplus for the year 1930 was only $37,586. But the insured was not entitled to share in this amount, because, by the provisions of the policy, his failure to keep it in force for all of that year excluded him from participating in the undistributed surplus of that year.

The actuaries gave testimony of a technical nature, distinguishing between dividends and dividend additions, which we find it unnecessary to amplify. Reference is made for a discussion of that subject to the opinion of the Supreme Court of the United States in the case of *Williams* v. *Union Central Life Ins. Co.,* 291 U. S. 170. The actuaries explain why appellant and all other insurers do not distribute the entire surplus each year, the explanation being that at the end of each year the board of directors sets up a liability for the payment of dividends, which is conservatively estimated. A rate is fixed at which the outstanding policies shall participate. It cannot be foretold with certainty what losses will be sustained by death of policyholders, the depreciation of securities and other assets. First year policies do not participate at all unless the second year's premium is paid. The insurer must have a margin of safety to be kept solvent and to meet contingencies. The policy does not require the apportionment of the entire surplus, but

the participation, as provided by the policy, is in "the divisible surplus as ascertained and apportioned by the board of directors." The case of *Williams* v. *Union Central Life Ins. Co.*, *supra*, sustains this right when the parties have so contracted, as in the instant case. There are, however, no dividend additions which operated to extend this insurance, for the reason that the undisputed evidence shows that the insured had always used his dividends for the payment of his premiums, and was, therefore, not entitled to any dividend additions. They could not be employed for this purpose, having been withdrawn by the insured for another use.

It is insisted that, having deducted the amount of the policy loan from the cash value of the policy, it was improper and unauthorized to also deduct it from the amount of the extended insurance. But the authorities appear to be that this may be done when the policy so provides, as it does in the instant case. *Schoonover* v. *Prudential Ins. Co.*, (Minn.) 245 N. W. 476; *Alexander* v. *Northwestern Mut. Life Ins. Co.*, (Mo.) 290 S. W. 452; *Neal* v. *Columbian Mut. Life Assur. Society*, (Miss.) 138 So. 353.

The policy construed in the Williams case contained this provision: "22. Deduction of Indebtedness. If there be any indebtedness or advances on this policy, the cash value shall be reduced thereby; the paid-up value shall be reduced proportionately; and the extended insurance shall be for the face value of the policy less the indebtedness and advances and for such term as said reduced cash value will provide."

The opinion in that case contains no intimation that there was a lack of power to make such a contract.

The same provision appears in the policy sued upon in the case of *Life & Casualty Ins. Co.* v. *Goodwin, supra,* and set out in that opinion.

The policy here sued on provides that loans do diminish the cash value, and also that the amount of the extended insurance is also reduced by the amount of the indebtedness, and we have been cited to no case which renders such a contract invalid. As a matter of fact, this provision works no injustice. It came within fifty-five

days of saving the insured in the instant case, whereas, if the extended insurance had been for the full face of the policy the extended insurance would have expired at a correspondingly earlier date.

The controlling question (under option (b), which is conceded to be determinative) is, for what period of time will the insured's interest under the policy pay a single premium on a given amount of insurance? and it is obvious that, as the insurance is reduced in amount, it is proportionately increased in duration.

It is insisted that the loan on the policies of insurance is, in effect, a mortgage, which has not been legally foreclosed, and that the proceeds of the policies, or their reserve value, could be converted into term insurance only upon notice that this action was about to be taken. But it will be remembered that the loan was made upon the sole security of the policy, and there was no obligation to repay it. As was said in the case of *Williams* v. *Union Central Life Ins. Co.*, supra: "While the advance is called a 'loan' and interest is computed in settling the account, the item never could be sued for and in substance is a payment, not a loan."

So here, the advance to the insured, while referred to as a loan, was, in substance, a payment in advance on the policy, and none of the characteristics of a mortgage appear. There was no foreclosure of any kind.

The question of notice was first raised during the progress of the trial, and counsel for appellant stated that, if this question was injected into the case, he would have to ask a continuance to procure testimony to the effect that notice had been given that the policy was no longer in force. The complaint presented no such issue, and there was no request for permission to so amend the complaint as to raise it. It was no abuse of the court's discretion, under the circumstances, to disregard the question, as was done. The complaint alleged the applicability of option (b), and the proper interpretation and application of that option is, as has been said, the controlling question in the case.

Certain other questions are discussed in the briefs, but we think they are concluded by what has been said, and, if not, they require no discussion.

We think the undisputed testimony shows that the insured lived beyond the time of the expiration of the extended insurance, and that the policy was therefore not in force at the time of his death.

The judgment must therefore be reversed, and, as the cases appear to have been fully developed, they will be dismissed. It is so ordered.