## BLACK v. PACIFIC MUT. LIFE INS. CO.
(two cases).

Nos. 175, 176.

District Court, E. D. Arkansas, W. D.

Feb. 27, 1940.

R. W. Robins, of Conway, Ark., for plaintiff.

Owens, Ehrman & McHaney, of Little Rock, Ark., for defendant.

TRIMBLE, District Judge.

These actions were brought by the plaintiff to recover upon two policies of insurance issued by the defendant upon the life of Ernest T. Black. By agreement of counsel they were tried by the court without a jury.

There is no conflict in the evidence, the facts being undisputed.

Policy No. 775803 bears date of November 6, 1930, while policy No. 779112 is dated December 20, 1930. In all other respects the policies are identical and the plaintiff is named as beneficiary in both policies.

Six annual premiums were paid on both policies. From time to time the insured borrowed money from the company on the security of the policies. The last loan on policy No. 775803 was evidenced by a note in the sum of $289.02, dated November 6, 1935, and payable November 6, 1936. The last loan on policy No. 779112 was evidenced by a note for $295.40, dated December 20, 1935, and payable December 20, 1936. Both notes bear 6 per cent interest.

The insured did not pay any part of the seventh annual premiums on either of the policies and both of them were lapsed by the company for non-payment of those premiums, policy No. 775803 as of November 6, 1936, and policy No. 779112 as of December 20, 1936.

Each of the policies provides that after the policy shall have been in force for three full years "the insured may elect within three months after any default in payment of premium, but not later, any one of the following options:"

The first option is to surrender the policy for its cash value, "which shall be equal to the entire reserve on the face amount of this Policy, taken to the nearest dollar for each thousand dollars of insurance, and on any outstanding dividend additions thereto, (computed according to the American Experience Mortality Table and interest at the rate of three and one-half per centum per annum) less any indebtedness hereon to the Company."

The second option is to take paid up insurance in a greatly reduced amount. .

Option 3 reads as follows: "Paid-Up Term Insurance. Have the insurance for the face amount of this Policy, plus any outstanding dividend additions and less any indebtedness hereon to the Company, continued in force from date of default, without participation and without the right to loans, for such term as the cash surrender value (as computed in Option 1 preceding) will purchase, applied as a net single premium at the attained age of the Insured based on the American Experience Mortality Table and interest at the rate of three and one-half per centum per annum."

The third option is immediately followed by a paragraph which states: "If the Insured shall not, within three months from default, make election as provided under the Non-Forfeiture Benefits of the Policy, the insurance will be automatically continued as provided in Option 3 thereof."

Both policies provide for loans to be made to the insured "on the sole security thereof".

Both policies state that while they are in full force and effect they shall participate in the future surplus earnings of the participating business of the company, and provide: "The proportion of the divisible surplus accruing on this policy shall be determined by the company * * *."

The insured was given the option of using the dividends in different ways, but if he failed to elect another option the policies provide that dividends will be applied to the purchase of paid-up additions.

At the time the policies lapsed, the insured was entitled to a dividend of $19.75 on each policy.

The insured did not exercise either of the options provided in the policies, and the company purchased paid-up additions of $40 on each policy with the dividend and then put Option 3 of the Non-forfeiture Benefits Clause in effect and notified the insured that it had done so.

In doing this, the company took the face amount of the policy, added the $40 dividend addition, and subtracted the amount of the indebtedness thereon to the company. This was done to determine the amount of paid-up insurance to be carried under the terms of Option 3. The amount thus determined was $4,734 on policy No. 775803, and $4,727 on policy No. 779112.

The company then fixed the amount available to purchase paid-up insurance by taking the cash surrender value at the end of the sixth year, which was $405 in each instance, adding to it the value of the dividend addition, which the company calcu-

lated at $18.64 in each instance, and subtracted from the total the indebtedness to the company. On policy No. 775803 the note and interest amounted to $306.36, while on policy No. 779112 the loan and interest aggregated $313.12.

This left available for the purchase of paid-up term insurance $117.28 on policy No. 775803 and $110.52 on policy No. 779112.

The actuaries testified that these amounts were sufficient to carry policy No. 775803 in force until January 29, 1939, and policy No. 779112 in force until January 27, 1939.

The insured died on May 1, 1939, approximately ninety days after the paid-up term insurance as calculated by the company had expired.

The plaintiff did not question the testimony of the company officials as to the number of premiums paid, nor the amount of the cash loans. She did not controvert the computations made by the company actuary and verified by the actuary of another insurance company.

The plaintiff first contends that the company had no right to deduct the amount of the notes from the cash surrender value of the policies in arriving at the amount available for the purchase of extended or paid-up term insurance. She argues that because the amount of the indebtedness was deducted in determining the amount of the extended term insurance to be purchased the defendant is, in effect, deducting the loan twice.

Plaintiff relies upon Bozeman's Adm'r v. Prudential Life Insurance Company of America, 130 Ky. 572, 113 S.W. 836. The policy provisions in that case differ materially from those now under consideration and are readily distinguishable. There, the policies provided that in event of a lapse the company would write "a nonparticipating paid-up term policy for the full amount insured by this policy, and to continue in force for the term indicated by the following table of extended insurance." It was then stated that the "benefits stated in the following tables apply to the original sum insured only. Any indebtedness placed on the policy will operate to reduce the benefits." There was no explanation of the manner in which the benefits were to be reduced. The court held that the loan should be deducted from the face of the policy and that the insurance would continue in the reduced amount for the full length of time shown in the table, stating that to hold otherwise would necessitate the interpolation of words and phrases not contained in the contract.

In the present case the policy provisions are clear and unambiguous. Option 3 fixes the amount of the paid-up term insurance to be purchased and specifically provides that that amount of insurance shall be issued for such term or length of time which the cash value will purchase. It provides that the cash surrender value shall be arrived at in the same manner as it is computed in Option 1. Option 1 clearly provides for the deduction of any outstanding indebtedness due the company in arriving at the cash value.

While it is true that the table of cash loan and non-forfeiture values provides for paid-up term insurance of seven years and one hundred and twenty-two days at the end of the sixth year, the policy plainly states that the amounts shown in the tables apply only when there is no indebtedness due the company.

These policies are to be construed in accordance with Arkansas law. The Supreme Court of Arkansas, in the case of Home Life Insurance Co. v. Stephens, 190 Ark. 1018, 82 S.W.2d 515, 518, construed a policy of insurance practically identical in terms with those now under consideration. In disposing of the issue now raised, the Supreme Court of Arkansas said: "It is insisted that, having deducted the amount of the policy loan from the cash value of the policy, it was improper and unauthorized to also deduct it from the amount of the extended insurance. But the authorities appear to be that this may be done when the policy so provides, as it does in the instant case. Schoonover v. Prudential Ins. Co., 187 Minn. 343, 245 N.W. 476; Alexander v. Northwestern Mut. Life Ins. Co. (Mo.App.) 290 S.W. 452; Neal v. Columbian Mut. Life Assur. Society, 161 Miss. 814, 138 So. 353."

The plaintiff next contends that the defendant is estopped to deduct the amount of the notes from the cash surrender value of the policies because it did not cancel the notes and return them to the insured.

The policies now before the court provide that the company will advance to the insured the whole or any part of the cash surrender value of the policy "on the sole security thereof."

808

The Supreme Court of Arkansas, in the case of Home Life Insurance Company v. Stephens, 190 Ark. 1018, 82 S.W.2d 515, 518, also decided this question adversely to plaintiff, saying that since the loan was made upon the sole security of the policy there was no obligation to repay it. The court quoted with approval language of the Supreme Court of the United States in the case of Williams v. Union Central Life Insurance Co., 291 U.S. 170, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693, as follows: "While the advance is called a 'loan' and interest is computed in settling the account, 'the item never could be sued for,' and in substance 'is a payment, not a loan.' "

The plaintiff relies upon the case of Missouri State Life Insurance Co. v. Crabtree, 124 Ark. 214, 187 S.W. 173, 174. The note in that case specifically provided that if it be not paid the insurance should cease, "but, nevertheless, the maker of this note shall be personally liable to the company for a sum equal to one-half of the principal, of this note * * *." The note also gave the company the alternative right to treat the note as an indebtedness on the policy to reduce any of its non-forfeiting value. The Supreme Court of Arkansas held that the company had to elect between treating the note as an indebtedness against the policy or as a continuing obligation of the insured.

█ In the present case, as in Home Life Insurance Company v. Stephens, supra, the notes were not personal obligations of the insured and the company was not required to cancel and return them.

Finally, the plaintiff contends that the company's earnings justified the declaration of larger dividends than those apportioned to these policies, and that the court should hold that the company therefore held additional funds belonging to the insured which should have been used in the purchase of paid-up term insurance.

The plaintiff propounded an interrogatory to the company actuary covering the company's earnings during the period in question, the number of its outstanding policies, and the amount of its insurance in force. The interrogatory also requested an explanation of the method of computing the dividends on these policies for the years in question.

It appears from the answer to this interrogatory that earnings were distributed according to a plan known as the "contribution" method, which is generally employed by mutual life insurance companies. Had the company been able to continue on the scale of dividends determined by this plan in 1931, the insured would no doubt have received higher dividends in subsequent years. The company, however, found it necessary to modify or reduce its dividend scale in 1932, 1933, and 1934, the 1934 modification being continued thereafter while the policies were in force. The actuaries testified that these modifications were necessitated by the downward trend in interest earnings and other factors produced by the business depression. Reduction in dividend paid policyholders was not peculiar to this defendant; other companies writing participating insurance were also forced to reduce dividends.

The policies provide that the proportion of the divisible surplus accruing on each policy "shall be determined by the Company."

The insured never questioned the amount of the dividends apportioned to these policies by the company.

█ Since the contract gives the company the right to determine the amount of divisible earnings and their apportionment among the policyholders, courts will not interfere unless there is bad faith, wilfull neglect, or abuse of discretion. Greeff v. Equitable Life Assurance Society, 160 N.Y. 19, 54 N.E. 712, 46 L.R.A. 288, 73 Am. St.Rep. 659; Rhine v. New York Life Insurance Co., 273 N.Y. 1, 6 N.E.2d 74, 108 A.L.R. 1197; Sullivan v. Penn Mutual Life, 7 Cir., 100 F.2d 560.

█ There is no evidence of bad faith, wilfull neglect, or abuse of discretion in this case.

Judgment will be entered for defendant in accordance with this opinion.